**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Nathan BOROVICHKA, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 1, 2010.

Filed April 27, 2011.

Paul R. Gettleman, Portersville, for appellant.

Marjorie J. Fox, Assistant District Attorney, Waynesburg, for Commonwealth, appellee.

BEFORE: BOWES, LAZARUS, and FREEDBERG, JJ.

OPINION BY LAZARUS, J.:

Nathan Borovichka ("Borovichka") appeals from his judgment of sentence imposed in the Court of Common Pleas of Greene County,[1] after a jury convicted him of driving under the influence of alcohol ("DUI")—highest rate. 75 Pa.C.S.A. § 3802(c). In this appeal, Borovichka raises four issues, which for the following reasons are meritless. The Commonwealth, however, asks that we vacate Borovichka's

---

1. Although Borovichka filed his notice of appeal from the January 26, 2010 order denying his post-sentence motion, we have amended the caption to reflect that the appeal is technically taken from the judgment of sentence. *See Commonwealth v. Chamberlain,* 442 Pa.Super. 12, 658 A.2d 395 (1995) (order denying post-sentence motion acts to finalize judgment of sentence; thus, appeal is taken from judgment of sentence, not order denying post-sentence motion).

judgment of sentence and remand for re-sentencing because the trial court imposed an illegal sentence by failing to follow the mandates of 75 Pa.C.S.A. §§ 3814 and 3804(d). Because we agree with the Commonwealth, in part, we vacate Borovichka's judgment of sentence and remand for further proceedings consistent with this memorandum.

The trial court set forth the relevant facts as follows:

In the early morning hours of March 16, 2008, the Pennsylvania State Police station in Waynesburg received a call from 911 that a vehicle was stopped in the drive-thru lane of a McDonald's Restaurant in Franklin Township with the operator asleep or unconscious in the driver's seat. [ ] Trooper Sean Scott responded to the call, but he was some distance away. Officer Billy Nichols of the Waynesburg Borough Police Department heard the same message and responded to the state police dispatcher that he could check out the situation.

Waynesburg Borough is completely surrounded by Franklin Township which relies on the state police for police protection. The McDonald's is approximately one-quarter mile east of the borough boundary.

When Officer Nichols arrived on the scene, he saw a red pickup truck stopped in the drive-thru lane. The operator was sitting behind the wheel and appeared to be asleep with his head leaning against the seat's headrest. Officer Nichols pounded on the window and the driver (now Defendant) lowered his window. [Trooper] Scott arrived on the scene 10 or 15 minutes after the original call. When he arrived, [Borovichka] was asleep behind the wheel of his truck, with his foot on the brake of the vehicle. With ample probable cause to believe [Borovichka] was under the influence of alcohol, Trooper Scott trans-ported [him] to the local hospital where blood was drawn [by Crystal Kiger][;] the sample was later analyzed [on March 28, 2008] by [Douglas Samber of] the state police crime lab in Greensburg, Pennsylvania, yielding a [blood alcohol content] of 0.195%. The blood sample itself was destroyed by the lab on or about May 8, 2008 in accordance with standard procedures at the lab for disposition of old samples.

Trial Court Opinion, 5/13/2010, at 1–2.

On April 28, 2008, Trooper Scott completed a criminal complaint and affidavit of probable cause. The complaint was filed on May 1, 2008 and the district court issued a summons on May 12, 2008. On August 25, 2008, the Commonwealth filed a criminal information against Borovichka, charging him with two counts of DUI. *See* 75 Pa.C.S.A. §§ 3802(a)(1) and (c). Borovichka waived arraignment on September 3, 2008.

On October 14, 2008, Borovichka filed a motion to suppress, challenging the qualifications of the state lab testing facility and its personnel; he also challenged the timing of the testing. The court held a suppression hearing on November 25, 2008. At the hearing's start, Borovichka made an oral motion to amend his suppression motion to include a claim that Officer Nichols made an illegal, extraterritorial vehicle stop. The court directed Borovichka to file an amended motion. After Trooper Scott and Samber testified, the court continued the hearing to February 11, 2009 to allow for Officer Nichols to testify regarding the vehicle stop issue.

On December 2, 2008, Borovichka filed a motion to amend his suppression motion, raising the vehicle stop issue, and a motion seeking to independently test his blood sample. On December 31, 2008, Borovichka filed a motion *in limine* to preclude the Commonwealth from presenting the blood

alcohol test results at trial because the Commonwealth destroyed the blood sample on May 8, 2008 before he was able to independently test it.

The suppression hearing continued on February 11, 2009, at the close of which the court directed Borovichka to file a brief in support of suppression. In his March 6, 2009 brief, Borovichka challenged the initial vehicle stop and the Commonwealth's destruction of blood evidence. The Commonwealth filed a response, in which it disputed each claim, and the court, by order and opinion dated March 18, 2009, denied Borovichka's suppression motion and motion *in limine*.

On August 27, 2009, a jury convicted Borovichka of DUI—highest rate of alcohol, and acquitted him of DUI—general impairment, incapable of safe driving.[2] On October 28, 2009, the court sentenced Borovichka to 90–days to 12–months' incarceration and fined him $2,000.00. The court ordered Borovichka to perform community service and to undergo a drug and alcohol evaluation and assessment by Greene County Human Services Department or other approved agency within ten days, but did not have the benefit of the results of said evaluation and assessment prior to sentencing in contravention of 75 Pa.C.S.A. § 3814.[3]

On November 3, 2009, Borovichka filed a post-verdict motion, which the Commonwealth responded to and the court denied. Borovichka then filed a timely notice of appeal and Pennsylvania Rule of Appellate Procedure 1925(b) statement. On appeal, Borovichka raises the following issues for our review:

1. Should the evidence in this case be suppressed because the initial stop of the vehicle was illegal in that the officer who stopped the defendant's vehicle was out of his lawful jurisdiction and there was no issue of hot pursuit[?]

2. Did the Court err[ ] in not suppressing the blood evidence where the Commonwealth destroyed the blood evidence prior to the arrest of the appellant, thereby denying him the ability to have the blood tested by his own expert to prove his innocence as well as denying him his Sixth Amendment right to call witnesses on his behalf[ ]?

3. Did the trial court err[ ] in admitting the testimony of forensic scientist Douglas Samber of the [Pennsylvania State Police] Lab who tested the blood[?] He testified that he had no specific recollection of testing the appellant's blood nor did he have any specific recollection of the procedures that were used to test the defendant's blood.

4. Was the testimony of Samber also impermissible hearsay since the witness did not have an independent recollection of what was contained in his report, denying the defendant his meaningful right to cross-examination[?]

Appellant's Brief, at 3 (issues renumbered for ease of disposition).

As a prefatory matter, we address the Commonwealth's contention that Borovichka waived his claims of error (issues 1 and

---

**2.** The presentence investigation report reveals that Borovichka was charged with DUI in 2002, and accepted into an Accelerated Rehabilitation Disposition program ("ARD"). After successfully completing ARD, his charge was expunged.

**3.** The court further ordered Borovichka to provide the Commonwealth with evidence of having completed the evaluation and to comply with any prescribed treatment. According to the Commonwealth, that evaluation and assessment did not occur until December 22, 2009, the results of which recommended that Borovichka undergo repeat offenders treatment for a minimum of 25 hours.

2 above) with respect to the court's suppression rulings.

Under Pennsylvania Rule of Criminal Procedure 578, unless otherwise required in the interests of justice, all pretrial requests, including a request for suppression of evidence, must be included in one omnibus pretrial motion. *See* Pa.R.Crim.P. 578, Comment. Rule 579 states that an omnibus pre-trial motion must be filed within 30 days of arraignment. The only exceptions to this rule are: (1) the opportunity to do so did not exist, (2) the defendant or defense counsel was unaware of the grounds for the motion, or (3) the time for filing was extended by the court for good cause shown. *See* Pa.R.Crim.P. 579(A).

■ Here, Borovichka's initial motion to suppress was untimely filed on November 14, 2008, more than 30–days after September 3, 2008, the date he waived arraignment. The Commonwealth, however, never objected on waiver grounds and the case proceeded to a suppression hearing on November 25, 2008. At the hearing's start, Borovichka moved to amend his original suppression motion to include the vehicle stop issue. Defense counsel testified that he discovered the issue while speaking with the district attorney that morning. *See* N.T. Suppression Hearing, 11/25/2008, at 5.

Rule 579(A) specifically provides for an exception to the 30–day filing deadline where the issue is not previously known to defense counsel; here, defense counsel acknowledged that he became aware of this issue the day of the hearing. Counsel then moved to amend his original suppression motion and subsequently included the claim in his amended suppression motion. The Commonwealth never objected to consideration of this issue and the court addressed it in its opinion and order denying Borovichka's suppression claims. Under

these facts, we decline to deem this claim waived.

■ Borovichka's other claim, that the court erred in suppressing his blood alcohol results because the Commonwealth prematurely destroyed his blood sample, we deem waived. Borovichka raised this claim for the first time in his December 31, 2008 motion *in limine*. The issue was later discussed at the close of the February 11, 2009 hearing, *see* N.T. Suppression Hearing, 2/11/2009, at 2, and argued in Borovichka's March 18, 2009 brief in support of suppression. Unlike his vehicle stop claim, defense counsel never offered any reason why this claim was not raised in a timely fashion, and upon review, we conclude that none of Rule 579(A)'s filing exceptions apply. We, therefore, deem this issue waived. Even if we were to address the issue, for the reasons stated *infra*, it is meritless.

■ We first address Borovichka's claim that the initial vehicle stop was illegal because Officer Nichols, in responding to the call, violated the Pennsylvania Municipal Police Jurisdiction Act ("MPJA"), thereby warranting suppression of the evidence later obtained. In particular, Borovichka argues that because Officer Nichols did not develop probable cause inside his primary jurisdiction, Officer Nichols was unauthorized to stop him beyond his jurisdiction. We disagree.

Our standard of review from the denial of a suppression motion is well-settled:

We are limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We may consider the evidence of the witnesses offered by the prosecution, as verdict winner, and only so much of the defense evidence that remains uncontradicted as a whole. We are bound by

facts supported by the record and may reverse only if the legal conclusions reached by the court below were erroneous.

*Commonwealth v. McAliley*, 919 A.2d 272, 275–76 (Pa.Super.2007) (internal citations omitted).

The MPJA provides in relevant part:

(a) General rule.—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction in the following cases:

. . .

(5) Where the officer is on official business and views an offense, or has probable cause to believe that an offense has been committed, and makes a reasonable effort to identify himself as a police officer and which offense is a felony, misdemeanor, breach of the peace or other act which presents an immediate clear and present danger to persons or property.

42 Pa.C.S.A. § 8953(a)(5).

■ The Pennsylvania Supreme Court has indicated the MPJA's provisions are to be construed liberally in order to achieve its purposes, one of which is to promote public safety. *Commonwealth v. Lehman,* 582 Pa. 200, 870 A.2d 818, 820 (2005); *Commonwealth v. Laird,* 797 A.2d 995, 998 (Pa.Super.2002). The MPJA does not seek to create impenetrable jurisdictional walls to benefit criminals. *Commonwealth v. Hilliar,* 943 A.2d 984, 991 (Pa.Super.2008). In noting the public safety purpose of the MPJA, our Supreme Court has held that a technical violation of MPJA does not always warrant suppression of evidence. *Commonwealth v. O'Shea,* 523 Pa. 384, 567

A.2d 1023, 1030 (1989). Rather, when determining whether suppression is the appropriate remedy, a court should consider the totality of the circumstances of the case. *Id.*

In *Lehman,* Officer Robert Wagner was on-duty inside his primary jurisdiction when an ordinary citizen informed him that a car was parked on the highway and its driver was "slumped over." *Id.* at 818. Officer Wagner responded to the scene located about a quarter of a mile outside his jurisdiction. Upon arrival, Officer Wagner noticed the car engine running, its headlights on, and its radio blaring. He further observed appellant in the front seat, slumped over and asleep at the wheel; he concluded that appellant was intoxicated. Officer Wagner then detained appellant, had appellant perform field sobriety tests, and contacted police within that jurisdiction. Appellant was ultimately arrested for and later found guilty of driving under the influence of alcohol.

Our Supreme Court granted allowance of appeal to address section 8953(a)(5)'s scope. The Court, in concluding that Officer Wagner's conduct was permissible, determined that section 8953(a)(5):

authorizes an extra jurisdictional detention where the detaining officer is on duty, outside his or her jurisdiction for a routine or customary reason including responding to an exigent circumstance, develops probable cause to believe an offense has been committed, and limits out-of-jurisdiction activities to maintaining the *status quo,* including detaining the suspect, until officers from the appropriate jurisdiction arrive.

*Id.* at 821.

Similarly here, we conclude that Officer Nichols's conduct was permissible under section 8953(a)(5). Here, like in *Lehman,* Officer Nichols learned of an individual passed out in his vehicle while inside of his

primary jurisdiction and responded to the scene, located just outside of it, Officer Nichols doing so as a favor to state police. In both cases, the officers responded to an exigent circumstance that required an immediate police response: individuals unconscious at the wheel of their vehicle. Similarly, upon arrival, both Officers Wagner and Nichols maintained the *status quo* and awaited assistance from officers within that jurisdiction. Indeed, the only factual difference between *Lehman* and this case is the way in which the officers learned of the exigency. That factual difference—police dispatch versus ordinary citizen—does not command a result different from the one reached in *Lehman*. Accordingly, we conclude, per *Lehman*, that Officer Nichols's conduct was authorized under section 8953(a)(5).[4]

■ Even if we were to conclude that Officer Nichols violated the MPJA, suppression does not automatically follow. Rather, when deciding suppression issues based on MPJA infractions, a reviewing court must engage in a case-by-case analysis, based on the totality of the circumstances presented. *Commonwealth v. Henry*, 943 A.2d 967, 972 (Pa.Super.2008). In fact, our Supreme Court has cautioned that "a technical violation of MPJA does not always warrant suppression of evidence." *Commonwealth v. O'Shea*, 523 Pa. 384, 567 A.2d 1023, 1030 (1989). This is such a case. Based upon the totality of the circumstances, Borovichka would not be entitled to suppression, as Officer Nichols's conduct was more than reasonable. To conclude that such a violation warrants suppression would run afoul of the legislative intent behind the MPJA, which is to promote public safety, not to hinder law enforcement and shield criminal behavior. *See Laird, supra; Hilliar, supra.*

■ We next address Borovichka's claim that the court erred in failing to suppress his blood alcohol test results because the Commonwealth destroyed his blood sample before the district court issued a summons. By so doing, he claims the Commonwealth precluded him from independently testing the blood and calling witnesses to rebut the Commonwealth's evidence in violation of his rights under the Sixth Amendment to the United States Constitution. We disagree.

In *Illinois v. Fisher*, 540 U.S. 544, 124 S.Ct. 1200, 157 L.Ed.2d 1060 (2004), police arrested defendant in 1988 and charged him with possession of cocaine. Defendant was released on bond, and in 1989, he fled the jurisdiction, remaining a fugitive for over ten years. In September of 1999, while defendant was on the lam, police destroyed the cocaine pursuant to established procedures. When police finally arrested defendant in November of 1999, police informed him that the cocaine had been destroyed.

Consequently, defendant filed a pretrial motion to dismiss the drug charge based on the state's destruction of the evidence. The trial court denied the motion, and the case proceeded to a jury trial where defendant was convicted and sentenced to one year of imprisonment. The intermediate appellate court reversed on due process grounds, and the Illinois Supreme Court denied allowance of appeal. The United States Supreme Court reversed the state

---

4. Borovichka's assertion that Officer Nichols's conduct was improper because he did not develop probable cause inside his primary jurisdiction was specifically addressed and rejected by the *Lehman* Court. *See Lehman*, at 821. The Court stated that although Officer Wagner developed probable cause while inside his jurisdiction before acting outside of his jurisdiction, "the duty to act is triggered by the exigency, not the officer's relationship to the municipal border when it arises." *Id.*

intermediate court. The High Court stated:

> We have held that when the State suppresses or fails to disclose material exculpatory evidence, the good or bad faith of the prosecution is irrelevant: a due process violation occurs whenever such evidence is withheld. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). In [*Arizona v.*] *Youngblood,* [488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988),] by contrast, we recognized that the Due Process Clause *"requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant."* 488 U.S., at 57, 109 S.Ct. 333 [emphasis added]. We concluded that the failure to preserve this "potentially useful evidence" does not violate due process *"unless a criminal defendant can show bad faith on the part of the police."* *Id.,* at 58, 109 S.Ct. 333 (emphasis added).

The substance seized from respondent was plainly the sort of "potentially useful evidence" referred to in *Youngblood,* not the material exculpatory evidence addressed in *Brady* and *Agurs.* At most, respondent could hope that, had the evidence been preserved, a *fifth* test conducted on the substance would have exonerated him. *See Youngblood,* 488 U.S. at 57, 109 S.Ct. 333. But respondent did not allege, nor did the Appellate Court find, that the Chicago police acted in bad faith when they destroyed the substance. Quite the contrary, police testing indicated that the chemical makeup of the substance inculpated, not

exculpated, respondent, *see id.,* at 57, 109 S.Ct. 333, n., and it is undisputed that police acted in "good faith and in accord with their normal practice," *id.,* at 56, 109 S.Ct. 333 (internal quotation marks omitted) (quoting *California v. Trombetta,* 467 U.S. 479, 488, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) in turn quoting *Killian v. United States,* 368 U.S. 231, 242, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961)). Under *Youngblood,* then, respondent has failed to establish a due process violation.

*Id.* at 547–48, 124 S.Ct. 1200 (emphasis in original).

More recently, in *Commonwealth v. Snyder,* 599 Pa. 656, 963 A.2d 396, 405 (2009), the Pennsylvania Supreme Court adopted the *Fisher* approach as the "governing standard." In *Snyder,* defendants, who had been charged with violations under the Solid Waste Management Act, filed a motion to suppress the results of the tests on the soil sample, which they claimed was destroyed before they could independently test it. The Court granted the Commonwealth's petition for allowance of appeal to consider whether the Commonwealth Court erred in affirming the trial court's order suppressing the test results.

Pursuant to *Fisher,* the *Snyder* Court held that a showing of bad faith is required for a due process violation where the Commonwealth destroys potentially useful evidence before the defendant has an opportunity to examine it, no matter whether the evidence is introduced at trial and no matter how useful the evidence is to the prosecution or the defense.[5] *Id.* at 404–405. Because the evidence at issue was only potentially useful and no bad faith was shown, the *Snyder* Court determined that the trial court improperly granted suppression. *Id.* at 406.

**5.** In so holding, the Pennsylvania Supreme Court abrogated *Commonwealth v. Deans,* 530 Pa. 514, 610 A.2d 32 (1992), making Borovichka's reliance on it misplaced.

Here, Borovichka's blood sample was inculpatory evidence, revealing that his BAC was well over the limit. *At best,* the evidence was what the *Fisher* Court defined as "potentially useful," evidence: evidence which "*could* have been subjected to tests, the results of which *might* have exonerated" the defendant. *Id.* at 406 (emphasis in original). Because the evidence was at most potentially useful, *Fisher/Snyder* required Borovichka show that the Commonwealth acted in bad faith.

 Borovichka's bad faith claim— based upon the Commonwealth having destroyed his blood sample before his DUI arrest and before he had notice thereof—is unavailing. Indeed, his claim appears to be founded upon his erroneous belief that he was not arrested until the summons was filed and did not have notice of his arrest until that time too. However, Pennsylvania Rule of Criminal Procedure 503 provides: "When a defendant is arrested without a warrant, *it is the **arrest itself** which institutes the proceedings, followed by the filing of the complaint." Id.* at Comment (emphasis added); *see also* Pa.R.Crim.P. 502.

Thus, Borovichka's March 16, 2008 *DUI arrest* instituted the proceedings, not the summons. Similarly, his arrest and not the summons should have alerted him to the significance of the blood sample taken that night at the hospital in Trooper Scott's presence. Indeed, had Borovichka bothered to act with a modicum of due diligence he could have obtained the specimen for independent testing before it was destroyed on May 8, 2008. It is his failure to do so which precluded him from testing the sample, not the Commonwealth's. The fact that the lab destroyed Borovichka's blood sample before the summons was filed does not alone establish bad faith on the Commonwealth's part. Indeed, the constitutionality of storing and destroying evidence in a criminal prosecution does not hinge on when the district court issues the summons. Rather, it is tied to the standards articulated in *Youngblood, Fisher,* and *Snyder,* which focus on the materiality of the evidence at issue and whether the state acted in bad faith in destroying it.

 Here, the record is devoid of any evidence indicating that the Commonwealth acted in bad faith. The blood sample was destroyed, not maliciously or out of bias, but pursuant to lab protocol, which provides that specimens are retained for 30 days before being destroyed. Samber testified that the lab may store a sample for up to six weeks, space provided, and that, in Borovichka's case, the lab stored his sample for even longer. Due process does not impose upon police the "absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Youngblood,* 488 U.S. at 57, 109 S.Ct. 333. That the Commonwealth stored Borovichka's blood sample beyond that date which it was required to before destroying it *pursuant to lab policy,* suggests to us that the Commonwealth did not act in bad faith. Because the evidence at issue was at best "potentially useful" and there was no showing that the Commonwealth acted in bad faith, Borovichka's claim must fail. The trial court, therefore, did not err in failing to suppress the blood alcohol test results. *See Snyder, supra; Fisher, supra; Youngblood, supra.*

Because issues 3 and 4 are similar, we address them together. Therein, Borovichka contends the court erred in admitting Samber's testimony because "the memorandum [lab report] was never offered into evidence and it was err[or] to allow [Samber] to testify because there was no opportunity to cross examine him regarding the substance of his report and his testimony was mere hearsay." Appellant's Brief, at 14. Borovichka cites to

*Commonwealth v. Butts,* 204 Pa.Super. 302, 204 A.2d 481 (1964) in support of his position; however, his reliance on that case is misplaced as it actually supports the conclusion that the court properly admitted Samber's testimony.

▮ The following standard governs our review of the admissibility of evidence:

Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.

Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Levanduski,* 907 A.2d 3, 13–14 (Pa.Super.2006) (*en banc*) (internal citations omitted).

In *Butts,* this Court stated:

Where a witness has no present recollection of a past event, even when aided by a memorandum made at the time, the memorandum itself may be offered in evidence, on testimony by the witness of his knowledge of its accuracy when made, and that it was made when the transaction was fresh in his mind.... [I]t is now almost universally held ... that upon the laying of a proper foundation a witness may testify from a written memorandum though it does not recall the facts to his memory[.]

*Id.* at 485 (internal citations and quotations marks omitted).

▮ Here, we first note that Borovichka has misrepresented the record. The Commonwealth *offered* Samber's report into evidence after Samber authenticated the lab report, described the procedures used to obtain an individual's blood alcohol level, and testified that Borovichka's blood alcohol content was .195%. The Commonwealth then moved to admit Exhibit 3 into evidence, which the court did without any objection from defense counsel.[6] *See* N.T. Trial, 8/27/2009, at 174.

▮ It was not until defense counsel established on cross-examination that Samber could not specifically recall having tested Borovichka's blood that he moved to strike Samber's testimony. While Samber could not recall testing Borovichka's blood *a year earlier, Butts* specifically permits a witness to testify from a written memorandum despite the witness's lack of recall. Indeed, it would be absurd to require Samber to recall testing Borovichka's blood, as he performed the testing more than year earlier, while in the meantime having performed the same test hundreds of times. On these facts, we cannot conclude that the court erred in admitting Samber's testimony.[7] *Butts, supra; Levanduski, supra.*

---

6. As such, any challenge to the admission of the report is waived. *Commonwealth v. Powell,* 598 Pa. 224, 956 A.2d 406, 423 (2008) (providing that "absence of a contemporaneous objection below constitutes a waiver of appellant's current claim respecting the pros-

ecutor's closing argument"), *citing* Pa.R.A.P. 302(a).

7. To the extent that Borovichka asserts a claim under the Confrontation Clause of the Sixth Amendment to the U.S. Constitution,

 Having concluded that none of the issues Borovichka raises entitle him to relief, we address the Commonwealth's assertion that the court imposed an illegal sentence.[8] The Commonwealth first contends that the court erred by imposing sentence before Borovichka underwent a drug and alcohol assessment pursuant to 75 Pa.C.S.A. § 3814. The Commonwealth further argues that, because the assessment revealed that Borovichka was a "person in need of additional treatment," 75 Pa.C.S.A. § 3804(d) mandated the court to impose a maximum sentence equal to the statutory maximum available, which in this case was five years.[9] Because the court imposed a maximum sentence of only one year, the Commonwealth asks us to vacate Borovichka's judgment of sentence and remand for the court to impose a five-year maximum sentence.

In its entirety, Vehicle Code section 3814 provides:

### § 3814. Drug and alcohol assessments

If a defendant is convicted or pleads guilty or no contest to a violation of section 3802 (relating to driving under influence of alcohol or controlled substance), *the following apply **prior to** sentencing:*

(1) The defendant *shall* be evaluated under section 3816(a) (relating to requirements for driving under influence offenders) and any other additional evaluation techniques deemed appropriate by the court to determine the extent of the defendant's involvement with alcohol or other drug and to assist the court in determining what type of sentence would benefit the defendant and the public.

(2) The defendant *shall* be subject to a full assessment for alcohol and drug addiction *if any* of the following subparagraphs apply:

(i) The defendant, within ten years prior to the offense for which sentence is being imposed, has been sentenced for an offense under:

(A) section 3802;

(B) former section 3731; or

---

that claim fails. The Confrontation Clause protects a criminal defendant's right to confront witnesses against him. *See Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); *Compare Commonwealth v. Barton–Martin*, 2010 PA Super 163, 5 A.3d 363 (2010) (holding pursuant to *Melendez–Diaz v. Massachusetts*, 552 U.S. 1256, 128 S.Ct. 1647, 170 L.Ed.2d 352 (2008) that appellant's rights under the Confrontation Clause were violated where Commonwealth *did not* present at trial analyst who prepared lab report indicating appellant's blood alcohol level was above 0.16% to convict appellant under 75 Pa.C.S.A. § 3802(c)). Here, Borovichka cross-examined (confronted) Samber (the witness), who analyzed his blood and testified at trial against him. Borovichka also cross-examined, Crystal Kiger the phlebotomist who drew his blood. As such, none of the concerns identified in *Melendez–Diaz* or *Barton–Martin* are present here.

8. A challenge to the legality of a sentence may be raised as a matter of right, is not subject to waiver, and may be entertained as long as the reviewing court has jurisdiction. *Commonwealth v. Foster*, 960 A.2d 160, 163 (Pa.Super.2008). "If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. We can raise and review an illegal sentence *sua sponte*." *Commonwealth v. Muhammed*, 992 A.2d 897, 903 (Pa.Super.2010) (citations omitted). When we address the legality of a sentence, our standard of review is plenary and is limited to determining whether the trial court erred as a matter of law. *Commonwealth v. Johnson*, 910 A.2d 60, 66 (Pa.Super.2006).

9. Vehicle Code section 3803(b)(4) grades Borovichka's crime as a first-degree misdemeanor. A first-degree misdemeanor subjects a defendant to a maximum term of imprisonment of five years. *See* 18 Pa.C.S.A. § 106(b)(6).

(C) an equivalent offense in another jurisdiction.

(ii) Either:

*(A) the evaluation under paragraph (1) indicates there is a need for counseling or treatment; or*

*(B) the defendant's blood alcohol content at the time of the offense was at least .16%.*

(3) The assessment under paragraph (2) shall be conducted by one of the following:

(i) The Department of Health or its designee.

(ii) The county agency with responsibility for county drug and alcohol programs or its designee.

(iii) The clinical personnel of a facility licensed by the Department of Health for the conduct of drug and alcohol addiction treatment programs.

(4) The assessment under paragraph (2) shall consider issues of public safety and shall include recommendations for all of the following:

(i) Length of stay.

(ii) Levels of care.

(iii) Follow-up care and monitoring.

75 Pa.C.S.A. § 3814 (emphasis added).

Section 3804(d) (penalties) of the Vehicle Code provides:

§ 3804. **Penalties**

\* \* \*

(d) Extended supervision of court.—*If a person is sentenced pursuant to this chapter and, after the initial assessment required by section 3814(1), the person is determined to be in need of additional treatment pursuant to section 3814(2), the judge **shall** impose a minimum sentence as provided by law and a maximum sentence equal to the statutorily available maximum.* A sentence to the statutorily available maximum imposed pursuant to this subsection may,

in the discretion of the sentencing court, be ordered to be served in a county prison, notwithstanding the provisions of 42 Pa.C.S. § 9762 (relating to sentencing proceeding; place of confinement).

75 Pa.C.S.A. § 3804(d) (emphasis added).

 Upon review of the record, we agree with the Commonwealth that the court erred by ordering that Borovichka's drug and alcohol evaluation occur after sentencing, when section 3814 clearly mandates that drug and alcohol assessments occur before sentencing under section 3802. The legislature, by requiring the evaluations to take place before sentencing, sought to provide the court with the information necessary to answer two questions: (1) "the extent of the defendant's involvement with alcohol or other drug," and (2) "what type of sentence would benefit the defendant and the public." *See* 75 Pa.C.S.A. § 3814. Here, by failing to order the evaluation to take place before sentencing, the court was without the information necessary to craft a sentence to meet Borovichka's individual needs. Therefore, we are compelled to vacate Borovichka's judgment of sentence and remand the matter to the trial court to readdress its sentencing scheme in light of Borovichka's drug and alcohol evaluation.

We, however, decline the Commonwealth's specific request to direct the court to impose a five year mandatory maximum sentence, per 3804(d), because it is unclear from the record whether that section applies. The Commonwealth has not provided us with any evidence regarding Borovichka's post-sentencing evaluation. We can neither confirm that the evaluation took place nor confirm its results. We also cannot determine whether Borovichka's evaluation was an initial assessment, under section 3814(1), or a full assessment under section 3814(2). This distinction is crucial because section 3804(d) requires

**1256**

the court to impose the statutory available maximum sentence only on an individual who is determined to be in need of additional treatment after a *full assessment under section 3814(2)*. The results of section 3814(1)'s initial evaluation do not trigger section 3804(d)'s mandatory maximum sentence.[10] As such, without being provided any evidence of Borovichka's post-sentencing evaluation, we do not accept the Commonwealth's assertion that section 3804(d) applies.

However, on remand, the court shall—in addition to considering the substance of the evaluation in fashioning an individualized sentence—address whether the evaluation was an initial evaluation under section 3814(1) or full assessment under section 3814(2), as that determination may affect the maximum sentence imposed. *See* 75 Pa.C.S.A. § 3804(d). To the extent that Borovichka has not underdone a full assessment for alcohol and drug addiction under section 3814(2), he must do so, as section 3814(2)(ii)(A) and/or (B) appear applicable.

Judgment of sentence vacated. Case remanded for further proceedings in accordance with this opinion. Jurisdiction relinquished.

---

10. Had the legislature intended for an individual to be subject to the statutory available maximum sentence after his/her section 3814(1) initial evaluation, the legislature could have easily done so by omitting from section 3804(d) the phrase "pursuant to section 3814(2)." With that said, we note that the results of the initial section 3814(1) evaluation can trigger the need for a full assessment under section 3814(2). *See* 75 Pa.C.S.A. § 3814(2)(ii)(A).