J-S78040-17

NON-PRECEDENTIAL DECISION — SEE SUPERIOR COURT I.O.P 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| DERRICK MICHAEL GLEASON, | : | |
| Appellant | : | No. 1101 WDA 2017 |

Appeal from the Judgment of Sentence April 11, 2017
in the Court of Common Pleas of Potter County
Criminal Division at No(s): CP-53-CR-0000067-2016

BEFORE:    OLSON, DUBOW, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:        FILED FEBRUARY 14, 2018

Derrick Michael Gleason (Appellant) appeals from his judgment of sentence imposed after a jury convicted him of aggravated assault, aggravated assault by vehicle, two counts of homicide by vehicle, criminal mischief — tampering with property, two counts of involuntary manslaughter, simple assault, and reckless endangerment.[1]    Specifically, Appellant challenges (1) the denial of his pre-trial motion to suppress evidence relating to the Commonwealth's accident reconstruction investigation, and (2) the trial court's evidentiary ruling limiting his cross-examination of the Commonwealth's accident reconstruction investigators, prohibiting him from inquiring about the Commonwealth's failure to preserve the wreckage of the two vehicles involved in the accident.  We affirm.

_____

[1] The trial court also convicted him of various traffic violations.

*Retired Senior Judge assigned to the Superior Court.

The Commonwealth filed a criminal complaint on February 17, 2016, charging Appellant with the aforementioned offenses, all of which stemmed from a fatal car accident. Prior to trial, Appellant filed a motion to suppress all evidence "arising out of or in connection with [the Pennsylvania State Police's (PSP)] scientific reconstruction of the accident in question on the basis that the Commonwealth has willfully and knowingly destroyed the key evidence on which such evidence … is based [i.e., the two vehicles involved in the accident], and has willfully and unnecessarily deprived the defense of the opportunity to perform its own comparable investigation." Motion to Suppress, 10/17/2016, at 5. Following a hearing on Appellant's motion, the trial court made the following findings of fact.

> [O]n September 18, 2015, [Appellant] was driving a 2003 Kia sedan, allegedly at a high rate of speed in Wharton Township, Potter County, Pennsylvania. Rounding a curve, [Appellant's] northbound vehicle crossed into the southbound lane and collided with a southbound 2015 Jeep Wrangler, which had veered right in an apparent effort to avoid the collision. [Appellant] and the driver of the Jeep, Mr. Wimer, were seriously injured. [Appellant's] two passengers were killed. The Commonwealth alleged [Appellant's] speed prior to the accident to be in excess of 80 miles per hour while the Wimer vehicle was going about 46 miles per hour.
>
> After the accident[,] the heavily damaged vehicles were taken to Black's Auto Body Shop[,] which has a secure enclosure for vehicles.
>
> Thereafter, Corporal Batterson of the [PSP], an accident reconstructionist, obtained a search warrant and examined both vehicles, noting they both had recent Pennsylvania inspections. After the Corporal's work was complete, it was decided that the vehicles would not be retained, and they were released to private

parties for salvage. Months later, in approximately February 2016, a criminal complaint was filed. …

Trial Court Opinion, 1/19/2017, at 1-2 (pagination supplied).

After taking the motion under advisement, the trial court issued an opinion and order denying the motion. The court determined that because Appellant was arguing that defense examination of the vehicles "may have been useful," pursuant to Commonwealth v. Snyder, 963 A.2d 396 (Pa. 2009), Appellant was required to show that the Commonwealth acted in bad faith by not preserving the vehicles. Trial Court Opinion, 1/19/2017, at 2 (page numbers supplied). The court concluded Appellant did not "set forth any theory or facts which might have benefitted the defense" and failed to "demonstrate[] any suggestion of bad faith." Id.

The case proceeded to trial. In addition to other witnesses, the Commonwealth called two expert witnesses: Corporal Batterson, who performed PSP's post-accident reconstruction and investigation, and Corporal Michael Schmit, who assisted Corporal Batterson. The defense called several witnesses including William Wetzel, its own expert regarding accident reconstruction. After hearing all of the evidence, the jury convicted Appellant of the aforementioned offenses, and the trial court found Appellant guilty of various traffic-related summary offenses. Appellant was sentenced to an aggregate term of 140 to 280 months' incarceration and fines. Appellant filed

timely an unsuccessful post-sentence motion and the instant notice of appeal.

Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following two issues on appeal.

1. Did the trial court err in failing to exclude expert testimony and conclusions derived from the state police inspection of two vehicles involved in a fatal accident when the state police failed to impound and preserve such vehicles following [its] inspection?

2. Did the trial court err in barring the defense from cross-examining state police investigators at trial regarding the decision-making process that led to their failure to impound and preserve the vehicles involved in the fatal accident in question?

Appellant's Brief at 1 (unnecessary capitalization omitted).

Regarding Appellant's first issue,

we begin by emphasizing that our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is de novo. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

Commonwealth v. Yandamuri, 159 A.3d 503, 516 (Pa. 2017) (citations omitted).

In Illinois v. Fisher, 540 U.S. 544 (2004), the defendant filed a motion for discovery requesting all physical evidence the state planned to use at trial, including the white powdery substance seized from the defendant during his

arrest. Id. Before the state complied with the discovery request and prior to trial, the defendant absconded. While the defendant remained a fugitive, the police, acting in accord with established procedures, destroyed the substance, notwithstanding the pending discovery request. Id. at 546.

The Court summarized its prior case law as follows.

> We have held that when the State suppresses or fails to disclose material exculpatory evidence, the good or bad faith of the prosecution is irrelevant: a due process violation occurs whenever such evidence is withheld. See Brady v. Maryland, 373 U.S. 83 [] (1963); United States v. Agurs, 427 U.S. 97 [] (1976). In [Arizona v. Youngblood, 488 U.S. 51 (1988)], by contrast, we recognized that the Due Process Clause "requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." 488 U.S.[ at 57]. We concluded that the failure to preserve this "potentially useful evidence" does not violate due process "unless a criminal defendant can show bad faith on the part of the police." Id.[ at 58] (emphasis added).

Id. at 547-48.

The police's testing of the substance demonstrated "that the chemical makeup of the substance inculpated, not exculpated" the defendant. Id. at 548. The Court concluded that because at most, all the defendant could argue is that he hoped more testing might exonerate him, the lost substance "was plainly the sort of 'potentially useful evidence' referred to in Youngblood." Id. at 548. The Court stressed that the centrality of the contested evidence to the prosecution's case or the defendant's defense is of no moment; instead, the important distinction lies between "material exculpatory" evidence and

"potentially useful" evidence. Id. at 549. The Court re-affirmed its prior holding that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id. at 545 (citing Youngblood, 488 U.S. at 58). Because the trial court found that the police did not act in bad faith when they disposed of the substance, the Court held that due process was not violated when the state introduced the results of their examination of the substance at trial. Id.

"[I]n Commonwealth v. Snyder, [] 963 A.2d 396, 405 ([Pa.] 2009), the Pennsylvania Supreme Court adopted the Fisher approach as the 'governing standard.'" Commonwealth v. Borovichka, 18 A.3d 1242, 1251 (Pa. Super. 2011). "In Snyder, defendants, who had been charged with violations under the Solid Waste Management Act, filed a motion to suppress the results of the tests on the soil sample, which they claimed was destroyed before they could independently test it."[2] Id. The Court held that in circumstances where the Commonwealth destroys potentially useful evidence before the defendant has an opportunity to examine it, Fisher requires the defendant to show the Commonwealth acted in bad faith in order to establish a due process violation, no matter how central or helpful the evidence may be to the defense or prosecution's case. Snyder, 963 A.2d at 404-05. The Court

---

[2] As in this case, the Commonwealth destroyed the samples prior to bringing charges against the defendant. Id. at 399.

determined the destroyed evidence was "merely potentially useful," and the trial court erred in suppressing the Commonwealth's test results because the Commonwealth did not destroy the samples in bad faith, even though the prosecution sought to use the samples at trial, the evidence would be central to the prosecution's case, and the disposal was "unnecessary." Id. at 406.

In the instant case, Appellant points to "[e]xtensive and un-contradicted testimony" presented by the defense expert at the suppression hearing "that without access to the actual vehicles, it was impossible to confirm the proper operation of the braking systems and other mechanical systems, the condition of the tires, or that no other mechanical factors contributed to the accident." Appellant's Brief at 6. Appellant argues that he "suffered clear prejudice when the prosecution was permitted to present expert analysis blaming [Appellant] for the accident because the defense had no available means of independently evaluating the evidence on which such expert analysis was based." Id. at 5-6. Appellant acknowledges that the PSP investigators had no "evil intent" when they failed "to preserve the key physical evidence in this case," but claims the investigators acted in an "inexplicably negligent" fashion. Id. at 7, n.2. According to Appellant, "due process requires ... such serious negligence [to] be considered bad faith even if evil intent is lacking." Id. at 7.

Furthermore, Appellant argues that this case is analogous to Commonwealth v. Deans, 610 A.2d 32 (Pa. 1992), wherein our Supreme

Court upheld the exclusion of prosecution expert testimony after an allegedly forged lottery ticket was lost before the defense could examine it. Appellant argues that as in Deans, the unpreserved evidence is "not just unavailable to the defense for potential use as a shield, [the evidence was] even used in absentia by the prosecution as a sword against the defense." Appellant's Brief at 7.

Appellant's arguments fail. It is clear that the wreckage of the vehicles constitutes "potentially useful" evidence, not "material exculpatory" evidence, as Appellant contends that the vehicles "could have been subjected to tests [by his own expert], the results of which might have exonerated [him]." See Fisher, 540 U.S. at 548 (citing Youngblood, 488 U.S. at 57) (emphasis added). See also Appellant's Brief at 6 ("[I]n this case clear reason exists for believing that exculpatory evidence may have been available but for the Commonwealth's decision to release the vehicles for destruction.") (emphasis added).

Thus, to prevail on the suppression motion, Appellant was required to show that the Commonwealth acted in bad faith when it failed to preserve the wreckage of the vehicles. Even if we were to agree with Appellant's contention that the Commonwealth acted negligently, Appellant cites to no authority to support his bald contention that negligence constitutes bad faith. Nor can he; the United States Supreme Court has made clear that bad faith requires more than negligence. Youngblood, 488 U.S. at 58.

Furthermore, Appellant's reliance on Deans is misplaced, as our Supreme Court held that Deans was no longer valid law after Fisher. Snyder, 963 A.2d at 404-05. In doing so, the Snyder Court specifically rejected the argument that the prosecution should not be able to use evidence to inculpate a defendant if the defendant has not been able to examine the evidence independently. Id. at 404 (stating that "bad faith is required for a due process violation where merely potentially useful evidence is destroyed, no matter how useful to the prosecution").

The record supports the trial court's determination that the Commonwealth did not act in bad faith. Corporal Sean S. Batterson of the PSP testified that the vehicles were secured at Black's Auto Body and PSP never took possession of the vehicles. N.T., 1/13/2017, at 34-35. Corporal Batterson gathered "information [from the] vehicles [he] felt was going to be pertinent to counsel for the Commonwealth and [d]efense," and removed and preserved airbag modules and data from the vehicles. Id. at 41-42. Corporal Batterson determined there was no further information "anybody would possibly need." Id. at 42. After consultation with another officer and the district attorneys' office, Corporal Batterson informed Black's Auto Body that PSP was done processing the vehicles. Id. at 41-46. Corporal Batterson testified that he did not find any evidence that was exculpatory or even "potentially usable" to the defense during his investigation of the vehicles. Id. at 50. Black's Auto Body released the Kia to Appellant's family, as Appellant

was still in the hospital recuperating from the injuries he sustained in the accident, and the Jeep to Mr. Wimer's insurance company. Id. at 53. Because the record does not support a finding of bad faith, we conclude the trial court did not err in denying Appellant's motion to suppress the results of the Commonwealth's accident investigation.

Regarding his second issue, Appellant argues that he was denied a fair trial because the trial court prohibited him from cross-examining the PSP investigators "regarding their failure to take any steps to impound and preserve the vehicles involved in the accident following their own inspection of same." Appellant's Brief at 8. Appellant contends that cross-examination exploring why PSP failed to preserve the vehicles would have permitted the jury to infer that "failure to preserve the vehicles in question, even if not legally mandated, still demonstrated a carelessness that undermined the basic credibility of the PSP's findings." Id. at 9.

We use the following standard in cases involving evidentiary rulings limiting cross-examination. "A trial court has discretion to determine both the scope and the permissible limits of cross-examination. The trial judge's exercise of judgment in setting those limits will not be reversed in the absence of a clear abuse of that discretion, or an error of law." Commonwealth v. Briggs, 12 A.3d 291, 335 (Pa. 2011) (quotation marks and citations omitted).

Here, Appellant was free to question the PSP investigators regarding their methods of investigation and the soundness of their conclusions. Based

upon its pre-trial ruling denying Appellant's motion to suppress, however, the trial court limited the scope of cross-examination regarding preservation of the vehicles to the fact that the vehicles had not been preserved, and informed the defense that it would advise the jury that PSP had no legal duty to preserve the vehicles. See, e.g., N.T., 1/13/2017, at 182-86. Since the trial court had already determined that the Commonwealth was not legally required to preserve the vehicles, we fail to see how further inquiry into the Commonwealth's failure to preserve was relevant in any fashion.[3] Even if it were somehow relevant to the investigators' credibility, the trial court was free to exercise its discretion and broad latitude to ensure that there was no confusion of the issues. Commonwealth v. Akrie, 159 A.3d 982, 989 (Pa. Super. 2017). Appellant fails to convince us that the trial court abused its discretion or committed an error of law in limiting the scope of cross-examination.

Based on the foregoing, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

---

[3] In its Rule 1925(a) opinion, the trial court states that the reasoning used in its order and opinion denying Appellant's motion to suppress is applicable to all of Appellant's issues on appeal. When discussing the limitations upon cross-examination at trial, the trial court again referred to its pre-trial ruling denying Appellant's motion to suppress and did not elaborate further upon its reasoning. Thus, the trial court never articulated the precise basis upon which it made its evidentiary ruling. However, "[i]t is well-settled that this Court may affirm a trial court's ruling on any basis." Commonwealth v. Kennedy, 151 A.3d 1117, 1127 (Pa. Super. 2016).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:   2/14/2018