J-S19044-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JOSEPH BLEDSOE, | : | |
| | : | |
| Appellant | : | No. 1552 EDA 2019 |

Appeal from the Judgment of Sentence Entered September 14, 2018
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006872-2015

BEFORE: BOWES, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    Filed: July 16, 2020

Joseph Bledsoe ("Bledsoe") appeals, *nunc pro tunc*, from the judgment of sentence entered following his conviction of one count each of rape, involuntary deviate sexual intercourse ("IDSI"), sexual assault, incest, endangering the welfare of a child, corrupting the morals of a minor, statutory sexual assault, unlawful contact with a minor, and intimidation in a child abuse case.[1]  We affirm.

The trial court described the trial evidence, viewed in a light most favorable to the Commonwealth, as follows:

> Between August of 2013, and February 19, 2015, [Bledsoe] had a sexual relationship with his biological daughter, K.[(also referred to as "the victim")], who[,] at the time[,] was between the ages of 15 and 16[,] and was living with [Bledsoe].  In August of 2013, K.[] moved in with [Bledsoe] and her grandmother in

---

[1] 18 Pa.C.S.A. §§ 3121(a), 3123(a)(1), 3124.1, 4302(a), 4304(a)(1), 6301(a)(1)(ii), 3122.1(b), 6318(a)(1), 4958(a)(2)(ii).

West Philadelphia. Before that, she had lived with her mother, step-father[,] and other siblings, and [Bledsoe] had been absent from her life since she was approximately 2 or 3 years old.

[Bledsoe] and K.[]'s first sexual encounter occurred a few months before she moved in with him. K.[] and her younger sister, also [Bledsoe's] daughter, spent the night at [Bledsoe's] house. Both girls were watching television on the couch. After K.[]'s sister fell asleep on the couch, [Bledsoe] brought K.[] upstairs to his bedroom and performed oral sex on her, made her perform oral sex on him, and then engaged in vaginal intercourse with her. After having sex with K.[], [Bledsoe] told her that what they did was their "secret[,]" and that he would get in trouble if she told anyone.

Shortly after K.[] moved in with [Bledsoe] in August of 2013, [Bledsoe] and K.[] began regularly engaging in sexual activity. From that time until the last time they engaged in sexual activity on February 19, 2015, a time period of nearly a year and a half, [Bledsoe] and K.[] had sex a few times a week. This included oral and vaginal sex. During this time, [Bledsoe] would withhold money, such as money for lunch, or not pay for things like clothes, shoes, and K.[]'s cell phone[,] unless K.[] continued having sex with him.

In February of 2015, K.[] told her boyfriend[,] George Campbell [("Campbell"),] about her sexual encounters with her father. Campbell insisted that K.[] should report [Bledsoe's] conduct to the police, but she did not want to get the police involved. On February 22, 2015, Campbell came to [Bledsoe's] house to confront [Bledsoe] about what K.[] had told him, but [Bledsoe] demanded that Campbell leave. However, a few hours later, Campbell came back to the house to again confront [Bledsoe], but [Bledsoe] refused to let him inside. K.[] attempted to go outside to see Campbell, but [Bledsoe] physically restrained her from doing so. Campbell heard the struggle going on inside the house and called the police. When the police arrived, they heard screaming and a commotion coming from inside the house. Police knocked on the door, identified themselves, and asked the occupants to open the door. When [Bledsoe] opened the door, K.[] rushed out of the house crying. [Bledsoe] and Campbell started yelling at each other, and [Bledsoe] proceeded to run towards Campbell. Police ordered [Bledsoe] to stop and then physically restrained him when he failed to do so. After police put

- 2 -

[Bledsoe] in the back of their vehicle, [Bledsoe] began yelling for K.[] and saying he wanted to speak to her. Meanwhile, K.[] informed Officer Geneva Russell that [Bledsoe] had been sexually abusing her. When this information was relayed to the other officers on the scene, [Bledsoe] was placed under arrest.

… K.[] was transported to Philadelphia Children Alliance, where she told staff about her sexual relationship with [Bledsoe]. On February 23, 2018, a sexual assault nurse performed a forensic examination on K.[] and collected DNA from inside [of] her vagina. Later, detectives collected DNA swabs from [Bledsoe] and Campbell. The DNA found inside [of] K.[]'s vagina matched that of [Bledsoe].

On March 8, 2015, [Bledsoe] called K.[] from prison and instructed her to tell detectives that she and Campbell had planted [Bledsoe's] sperm in her vagina. Again, K.[] did as [Bledsoe] instructed and testified at [Bledsoe's] preliminary hearing on June 18, 2015, that she and Campbell had planted [Bledsoe's] semen in her vagina.

Trial Court Opinion, 2/15/19, at 3-5 (citations and footnote omitted).

A jury subsequently convicted Bledsoe of the above-described charges. On September 14, 2018, the trial court sentenced Bledsoe to an aggregate term of 35-70 years in prison. Bledsoe filed post-sentence Motions on September 21, 2018. On September 25, 2018, the trial court granted trial counsel's request to withdraw from representation, and appointed James Berardinelli ("Attorney Berardinelli") to represent Bledsoe for litigation of his post-sentence Motions and any appeal. However, while the post-sentence Motions were pending, Bledsoe filed a *pro se* Notice of Appeal, which was docketed at 2964 EDA 2018. On December 28, 2018, the trial court denied Bledsoe's post-sentence Motions, thereby perfecting Bledsoe's appeal to the Superior Court. *See Commonwealth v. Cooper*, 27 A.3d 994, 1008 (Pa.

2011) (stating that when a premature appeal is filed during the pendency of post-sentence motions, the trial court retains jurisdiction to decide the motions; the appeal is perfected upon the filing of an order denying post-sentence motions).[2] Thereafter, Bledsoe filed a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal. The trial court filed an Opinion on February 15, 2019.

On May 16, 2019, this Court dismissed Bledsoe's appeal filed at docket number 2964 EDA 2018, because his counsel had failed to file an appellate brief. That same day, Bledsoe filed a counseled Petition for relief pursuant to the Post Conviction Relief Act ("PCRA"),[3] seeking reinstatement of his direct appeal rights, *nunc pro tunc*. The PCRA court granted Bledsoe's Petition on May 24, 2019. Thereafter, Bledsoe filed the instant *nunc pro tunc* appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Bledsoe presents the following claims for our review:

I. Is [Bledsoe] entitled to an arrest of judgment and/or a new trial in the above[-]captioned matter on the ground that the evidence was insufficient to establish the offenses of [r]ape by

---

[2] Bledsoe filed two additional Notices of Appeal from the same judgment of sentence. On December 12, 2018, Bledsoe re-filed the Notice of Appeal that he had filed at 2964 EDA 2018, which this Court docketed at 100 EDA 2019. On January 22, 2019, Attorney Berardinelli filed a counseled Notice of Appeal, which this Court docketed at 255 EDA 2019. This Court ultimately dismissed the appeals filed at 2964 EDA 2018 and 100 EDA 2019 as duplicative of the appeal filed at 255 EDA 2019.

[3] ***See*** 42 Pa.C.S.A. §§ 9541-9546.

[f]orcible [c]ompulsion and [IDSI,] since the Commonwealth's evidence failed to establish that the sexual intercourse and deviate sexual intercourse in question was accomplished through forcible compulsion?

II. Did the lower court err in precluding evidence of sexual activity between [K.] and her boyfriend as a potential source of the sperm discovered by the [K.]'s rape kit?

III. Did the [trial] court err[] in permitting Dr. Ralph Riviello [("Dr. Riviello")] to testify to the contents of the [K.]'s medical records when he had not been qualified as a records custodian and the Commonwealth failed to lay the proper foundation for a business record?

Brief for Appellant at 2-3.

Bledsoe first challenges the sufficiency of the evidence underlying his convictions of rape by forcible compulsion and IDSI. *See id.* at 9. Specifically, Bledsoe claims that the Commonwealth failed to prove the element of forcible compulsion, which is necessary to establish each offense. *See id.* According to Bledsoe, "K.[] did not describe being exposed to any physical coercion during the course of her sexual relationship with [Bledsoe]." *Id.* at 10. Bledsoe disputes the trial court's statement that he had refused to pay for clothing or K.'s cell phone unless she had sex with him. *Id.* Bledsoe asserts that this is a mischaracterization of K.'s testimony. *Id.*

Bledsoe argues that, in her testimony, K. indicated that, upon revealing to Bledsoe that she had a boyfriend, she did not receive "lunch money or stuff like that or [a] new pair of shoes, or something like that." *Id.* Bledsoe states, "Thus, it is clear that [his] decision to withhold food or clothing from K. was not contingent upon her engaging in sex, but rather, her involvement with her

boyfriend, of whom [Bledsoe] did not approve." ***Id.*** at 10-11. According to Bledsoe, "the only remaining factors cited by the [trial] court to establish forcible compulsion[] were the age and relationship of the parties." ***Id.*** at 11.

In its Opinion, the trial court set forth the appropriate law, addressed Bledsoe's claim, and concluded that it lacks merit. ***See*** Trial Court Opinion, 2/15/19, at 6-11. We agree with and affirm on the basis of the trial court's Opinion with regard to Bledsoe's first claim. ***See id.***

In his second claim, Bledsoe argues that the trial court improperly disallowed evidence related to K. and her boyfriend, "when the intended purpose was to establish the boyfriend as a potential source of the sperm discovered by the [K.]'s rape kit." Brief for Appellant at 11. Bledsoe acknowledges that evidence related to a victim's sexual past is inadmissible. ***Id.*** Bledsoe argues, however, that such evidence is admissible to demonstrate an alternative source of the semen found in the victim. ***Id.*** According to Bledsoe, the trial court disallowed such evidence because (1) a subsequent analysis determined that the DNA profile of the semen found in the victim matched his profile, and (2) he had failed to file a written motion seeking to introduce evidence of K.'s prior sexual activity to establish an alternative source. ***Id.*** at 12. In so holding, Bledsoe argues, the trial court ignored his counsel's cross-examination of the DNA expert regarding the "process by which she arrived at her conclusions[.]" ***Id.*** Further, Bledsoe contends that the trial court ignored the fact that in ***Commonwealth v.***

*Majorana*, 470 A.2d 80 (Pa. 1983), the Pennsylvania Supreme Court held that the exclusion of evidence of the victim's prior sexual activity, offered to explain an alternative source of the sperm found on the victim's body, constituted error, despite the absence of a written motion. Brief for Appellant at 12.

The following standard governs our review of the admissibility of evidence:

> Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.
>
> Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Borovichka*, 18 A.3d 1242, 1253 (Pa. Super. 2011) (quoting *Commonwealth v. Levanduski*, 907 A.2d 3, 13-14 (Pa. Super. 2006) (*en banc*) (internal citations omitted)).

In its Opinion, the trial court addressed this claim and concluded that it lacks merit. *See* Trial Court Opinion, 2/15/19, at 11-12. We agree with the sound reasoning of the trial court, as stated in its Opinion, and affirm on this

basis with regard to Bledsoe's second claim. ***See id.*** We additionally observe the following.

Prior to trial, the trial court specifically asked whether the defense would inquire into the sexual history of the victim. N.T., 7/9/18, at 14. Defense counsel responded, "No." ***Id.*** Nevertheless, defense counsel presented a Motion *in limine* to present evidence, which was revealed in discovery, that the victim was involved in a non-consensual sexual relationship with another man at the time of the alleged incident. ***Id.*** at 15-16. The trial court inquired into the relevance of such evidence in the instant case. ***Id.*** at 16. Although Bledsoe alleged the third-party abuse, he did not claim that such evidence would exculpate him from the instant charges. ***See id.*** at 21. Defense counsel proffered that

> It's not just my client who she supposedly had whatever type of sexual conduct. There are at least two other males that we would allege were having some type of sexual relationship…. [I]f there's trauma and/or issues that go beyond the rape, if there's assaults or other issues, I think that can be brought in, I believe, under the law. Not the actual incident[,] but physical intimidation [is] permitted.

***Id.*** at 22. The trial court deferred ruling on the issue until defense counsel produced law supporting Bledsoe's position. ***Id.*** at 22-23.

At trial, a discussion occurred as to whether defense counsel could challenge the DNA evidence by proving that the semen found in the victim's vagina came from someone other than Bledsoe. ***Id.*** at 92. The trial court ultimately ruled as follows:

[B]ased on what I'm hearing, you really don't have any articulable grounds for challenging the DNA evidence, you don't have an expert report that says the analysis is wrong, [or] any kind of a chain of custody issue that you have evidence that you can proffer. Something like that I would agree with the Commonwealth.

On the other hand, I agree with you that[,] to the extent that they introduced her sexual history with the boy[]friend … to show how the relationship changed, I think, and why there was more of a motive for her to disclose these things to her boy[]friend[,] and how this whole thing surfaced, that you can ask questions to attack the credibility of those statements[,] because you can always do that ….

You're certainly not revealing for the first time that she had sexual relations with this man during the time period that she was having sexual relations with your client, according to what they contend.

I don't think you can[,] and I won't allow you to get into new areas that are unrelated completely to what the Commonwealth was getting into, like, for instance, an alternative source of the semen.

*Id.* at 95-96. Thus, the trial court permitted Bledsoe only to inquire within the scope of the evidence brought out by the Commonwealth. *Id.* at 96-97. We discern no error or abuse of discretion, as there is no indication that the proposed evidence would not have exculpated Bledsoe.

In his third claim, Bledsoe argues that the trial court improperly permitted Dr. Riviello to testify regarding the contents of the victim's medical records. Brief for Appellant at 12. Bledsoe argues that Dr. Riviello was not qualified as a "records custodian." *Id.* Further, Bledsoe argues that the Commonwealth failed to lay the proper foundation to allow the medical records to be admitted as a business record. *Id.* Bledsoe, citing Pa.R.E. 803(6),

asserts that "[m]erely characterizing a document as a business record is insufficient to justify its admission, because a business record, which contains multiple levels of hearsay, is admissible only if each level falls within a recognized exception to the hearsay rule." *Id.* at 13. According to Bledsoe, Dr. Riviello testified regarding the collection of the rape kit swabs from the victim, which were used in the DNA analysis. *Id.* Bledsoe further directs our attention to Dr. Riviello's testimony that the victim had identified Bledsoe as the perpetrator. *Id.* at 12-13. However, Dr. Riviello had no direct knowledge of these events. *Id.* at 13. Because the Commonwealth failed to properly establish any of the requirements for admission of Dr. Riviello's testimony under Pa.R.E. 803(6), Bledsoe asserts that the trial court improperly admitted this evidence at trial. *Id.*

In its Opinion, the trial court determined that Bledsoe waived this claim, by failing to object to the admission of the contested testimony at trial, or in a motion *in limine*. Trial Court Opinion, 2/15/19, at 13. Our review of the record confirms the trial court's analysis, and its conclusion is sound. ***See id.*** We therefore affirm on the basis of the trial court's Opinion with regard to this claim. ***See id.***

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/16/20