J-S34021-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| PAUL BENEDICT WOLF | |
| Appellant | No. 533 MDA 2014 |

Appeal from the Judgment of Sentence February 21, 2014
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0007563-2011

BEFORE:  BOWES, J., OTT, J., and STABILE, J.

MEMORANDUM BY OTT, J.:                **FILED OCTOBER 23, 2015**

Paul Benedict Wolf appeals from the judgment of sentence imposed on February 21, 2014, in the Court of Common Pleas of York County, made final by the denial of post-sentence motions on March 19, 2014.  On June 14, 2013, a jury convicted Wolf of persons not to possess, use, or control a firearm, prohibited offensive weapons, and possession of drug paraphernalia.[1]  Subsequently, the trial court sentenced him to an aggregate term of five to ten years' incarceration.  In this appeal, Wolf raises suppression and weight issues.  Based upon the submissions by the parties, the certified record, and the relevant law, we affirm.

---

[1] 18 Pa.C.S. §§ 6105(a)(1) and 908, and 35 Pa.C.S. § 780-113(a)(32), respectively.

The facts and procedural history are as follows: On October 31, 2011, the Hanover Borough Police Department was dispatched to 312 East Middle Street in Hanover Borough for a report of shots fired and an individual holding a gun to his head. Anthony Hippensteel testified he lived in the same apartment building as Wolf. On the night of the incident, Hippensteel went over to Wolf's apartment and saw Wolf, holding a sawed-off shot gun underneath his chin, and counting, "1, 2, 3." N.T., 6/12/2013-6/14/2013, at 156. Hippensteel stated Wolf then took the gun from under his chin and fired it at the ceiling. *Id.* at 157.

Upon the officers' arrival at the scene, they came into contact with Amanda Bowen, Hippensteel's live-in girlfriend, who indicated that Wolf was in his apartment holding a sawed-off shotgun to his head and which he had previously fired into the ceiling. Bowen provided Wolf's cell phone number to Sergeant Joseph J. Bunty, Jr. Sergeant Bunty testified he called Wolf and asked him to step outside, and Wolf complied with his request.

Upon leaving the building, Wolf, unarmed at the time, was handcuffed and patted down for officer safety.[2] After Wolf was taken into custody for detainment purposes while the police attempted to find the missing shotgun, Wolf suggested he and the police enter his apartment, because he did not want to be seen talking to them. Officer Aumen and others removed the

---

[2] Officer Jared Aumen noted Wolf smelled of alcohol, but was coherent and did not appear to be intoxicated.

keys to the residence from Wolf's pocket and opened the door. The officer also indicated there was concern that Hippensteel may have still been in the apartment somewhere based on a statement by Bowen.

After entering the apartment, Officer Auman testified he observed fresh damage to the ceiling and a hole. Officer Auman read Wolf his **Miranda**[3] rights, which he waived. Officer Auman also observed 12-gauge shot gun shells and two pipes in plain view, which the officer believed to be drug paraphernalia. The officer stated he asked Wolf to fill out and sign a consent-to-search form, which Wolf declined to do.

The police then obtained a search warrant. Police Officer Marci Fureman testified that she spoke with Bowen regarding any weapons that Wolf may have had and Bowen described several hiding places. One of those places was a trashcan in the rear of the residence, where Officer Fureman found a spent cartridge from a shotgun. A sawed-off shotgun was also retrieved under a loose board in Wolf's kitchen. **See** Trial Court Opinion, 8/8/2014, at 3-4.

Wolf told Officer Auman he owed a lot of people money and that a friend had dropped the gun off for him. Wolf admitted he was not permitted to possess a firearm. Hippensteel testified that two or three days earlier, he

---

[3] **See Miranda v. Arizona**, 384 U.S. 436 (1966).

was present when a person named Alan came over to Wolf's apartment, pointed a gun at Wolf, and threatened to kill him.

Wolf was charged with multiple offenses relating to the October 31, 2011, incident, and counsel was appointed to represent him. Nevertheless, Wolf filed a *pro se* motion to suppress on January 31, 2012, and a *pro se* motion, requesting stand-by counsel on March 20, 2012. A hearing was held on April 2, 2012, to assess the request for stand-by counsel. The following day, the court denied the application for stand-by counsel, but approved the request for a substitution of counsel. New trial counsel was appointed, and filed omnibus pretrial motions *nunc pro tunc* on May 11, 2012.

A hearing on the suppression motion was held on May 21, 2012. The trial court dismissed the motion on January 9, 2013. The matter proceeded to a jury trial, which began on June 12, 2013. Two days later, the jury convicted Wolf of persons not to possess, use, or control a firearm, prohibited offensive weapons, and possession of drug paraphernalia. Sentencing was continued until February 21, 2014.[4] At that time, the court imposed a term of five to ten years' incarceration for the persons not to possess a firearm offense, a concurrent term of one to two years' imprisonment for the prohibited offensive weapons crime, and a concurrent

_____

[4] Prior to sentencing, trial counsel requested to withdraw from representing Wolf. The court granted the request and appointed new counsel. **See** Order, 8/14/2013, at 1.

term of six to 12 months' incarceration for the drug paraphernalia charge.

Wolf filed post-sentence motions on March 5, 2014. A hearing was held on

March 19, 2014. At that time, the court denied the post-sentence motions.

This appeal followed.[5]

In his first issue, Wolf argues the trial court erred in denying his

motion to suppress based on a lack of voluntary consent and exigent

circumstances. Wolf's Brief at 9. Specifically, he states:

> In this case it is not in dispute that [Wolf] was in custody prior to
> consent being given for him to be taken into his apartment by
> the police. While there was no direct testimony of any duress or
> coercive tactics by law enforcement, [Wolf] was not given any
> other option than to go back into his apartment to avoid being
> seen in custody. While [Wolf] did later refuse to give consent to
> search the apartment after the initial entry, it was done after the
> police attempted to get written permission to search. It was at
> that time it was explained to him that if he refused they would
> attempt to get a search warrant. There is no evidence that
> [Wolf] had any knowledge of his ability to refuse the first entry
> into his apartment. While there was no testimony to [Wolf]'s
> education and intelligence there was testimony that he was
> using controlled substances at the time of the encounter with the
> police. When reviewing these factors together, it is clear that
> [Wolf]'s consent was not voluntary in letting the police into his
> apartment.

---

[5] On March 28, 2014, the trial court ordered Wolf to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Wolf filed a concise statement on April 10, 2014. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on August 8, 2014.

During this time, on April 1, 2014, Wolf filed a motion stating he wanted to represent himself *pro se*. The court held a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998), and determined present counsel would continue to represent Wolf on appeal.

Wolf's Brief at 9-10. Moreover, Wolf asserts:

> [N]o exigent circumstances would have existed to justify the entry into the residence. No attempt was first made to locate Mr. Anthony Hippensteel at his residence prior to this entry. At the same time the entry was made Mr. Hippensteel was located by other officers at his residence. Once Mr. Hippensteel was located, the only concern was the location of the firearm. After [Wolf] refused a further search of his apartment, the police secured the residence to wait for the search warrant. The search for the firearm was not enough of an exigent circumstance for the police to take any further action until the search warrant arrived. Once Mr. Hippensteel was found in his residence, the same procedure could have been used prior to any entry into [Wolf]'s apartment.

*Id.* at 10.

When reviewing an order denying a pre-trial motion to suppress evidence, we are guided by the following:

> We are limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We may consider the evidence of the witnesses offered by the prosecution, as verdict winner, and only so much of the defense evidence that remains uncontradicted as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court below were erroneous.

*Commonwealth v. Borovichka*, 18 A.3d 1242, 1248-1249 (Pa. Super. 2011). Additionally,

> [a]ssuming that there is support in the record for the suppression court's factual findings -- and there is no dispute here on the governing facts -- we are bound by those facts and we may reverse only if the legal conclusions drawn from those facts are in error. If there is sufficient evidence of record to support the suppression court's ruling and the court has not misapplied the law, we will not substitute our credibility determinations for those of the suppression court judge.

However, if the court has misapplied the law, we must reverse that court's determination.

***Commonwealth v. Johnson***, 86 A.3d 182, 187 (Pa. 2014) (citations omitted).

As a general rule, a defendant charged with a possessory crime has automatic standing to challenge the legality of the search which resulted in the charges against him. ***See Commonwealth v. Bostick***, 958 A.2d 543, 551-552 (Pa. Super. 2008), *appeal denied*, 987 A.2d 158 (Pa. 2009).

> "The Fourth Amendment to the United States Constitution and Article 1, § 8 of the Pennsylvania Constitution require that searches be conducted pursuant to a warrant issued by a neutral and detached magistrate." "A warrantless search or seizure is *per se* unreasonable unless it falls within a specifically enumerated exception."

***Commonwealth v. Lee***, 972 A.2d 1, 3 (Pa. Super. 2009) (citations omitted).

Consent to search is an exception to the warrant requirement. With respect to consent, we note the following:

> In connection with the inquiry into the voluntariness of a consent given pursuant to a lawful encounter, the Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice--not the result of duress or coercion, express or implied, or a will overborne-- under the totality of the circumstances. While knowledge of the right to refuse to consent to the search is a factor to be taken into account, the Commonwealth is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. Additionally, although the inquiry is an objective one, the maturity, sophistication and mental or emotional state of the defendant (including age, intelligence and capacity to exercise free will), are to be taken into account.

Since both the tests for voluntariness and for a seizure centrally entail an examination of the objective circumstances surrounding the police/citizen encounter to determine whether there was a show of authority that would impact upon a reasonable citizen-subject's perspective, there is a substantial, necessary overlap in the analyses.

\* \* \*

[Thus, we] conclude that the following factors . . . are pertinent to a determination of whether consent to search is voluntary given: 1) the presence or absence of police excesses; 2) whether there was physical contact; 3) whether police directed the citizen's movements; 4) police demeanor and manner of expression; 5) the location of the interdiction; 6) the content of the questions and statements; 7) the existence and character of the initial investigative detention, including the degree of coerciveness; 8) whether the person has been told that he is free to leave; and 9) whether the citizen has been informed that he is not required to consent to the search.

***Commonwealth v. Powell***, 994 A.2d 1096, 1101-1102 (Pa. Super. 2010),

*quoting* ***Commonwealth v. Kemp***, 961 A.2d 1247, 1261 (Pa. Super. 2008)

(*en banc*) (citation omitted).

Moreover,

[e]xigent circumstances provide [another] exception to the warrant requirement. In ***Commonwealth v. Roland***, 535 Pa. 595, 637 A.2d 269 (1994), our Supreme Court provided the following description of the applicable constitutional principles relating to exigent circumstances:

In a private home, searches and seizures without a warrant are presumptively unreasonable. Absent probable cause and exigent circumstances, the entry of a home without a warrant is prohibited under the Fourth Amendment. In determining whether exigent circumstances exist, a number of factors are to be considered[:]

(1) the gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is strong reason to believe that the suspect is within the premises being entered, (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended, (6) whether the entry was peaceable, and (7) the time of the entry, i.e., whether it was made at night. These factors are to be balanced against one another in determining whether the warrantless intrusion was justified.

Other factors may also be taken into account, such as whether there is hot pursuit of a fleeing felon, a likelihood that evidence will be destroyed if police take the time to obtain a warrant, or danger to police or other persons inside or outside the dwelling. Nevertheless, police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests.

[*Id.* at 270-71]. Moreover, this Court has observed that, "the Commonwealth must present clear and convincing evidence that the circumstances surrounding the opportunity to search were truly exigent, [] and that the exigency was in no way attributable to the decision by police to forego seeking a warrant."

*Lee*, 972 A.2d at 3-4 (some citations omitted). In weighing the above factors, "we are mindful that our determination involves a balancing of the individual's right to be free from unreasonable intrusions against the interest of society in investigating crime quickly and adequately and preventing the disappearance of evidence necessary to convict criminals." *Commonwealth v. Fickes*, 969 A.2d 1251, 1259 (Pa. Super. 2009).

In denying Wolf's motion to suppress, the trial court found the following:

> The Court initially finds that [Wolf]'s invitation for the police to enter his residence and his further consent to the police being within the residence was knowingly, voluntarily and intelligently made, as evidenced by the fact that after the police sought [Wolf]'s permission to conduct a further search and to sign a document consenting to the search, he exercised judgment by refusing to sign.
>
> …
>
> The defense presented an appropriate argument that [Wolf] was in custody at the time that he made his initial invitation to the police to enter his premises, but the Court does not find this to be dispositive of the instant case, or to be unduly coercive in nature, since [Wolf] freely exercised his right to refuse a further search while still in police custody.
>
> In regard to the police search which resulted in the finding of a sawed-off shotgun beneath a board in the floor, the police, at this time, were confronted with two (2) exigent circumstances. First, they had a missing weapon, for which they had fresh evidence of discharge into the ceiling moments before their arrival, with the blast penetrating into another dwelling unit. Second, they had a missing person who lived in the building, specifically the neighbor, Anthony Hippensteel. At the time, the police were advised by Ms. Amanda Bowen, who lived with Anthony Hippensteel in the neighboring apartment, that Mr. Hippensteel was last seen in the presence of [Wolf] prior to the shot being fired. As such, when the police entered [Wolf]'s apartment, they had a legitimate concern regarding 1) whether Mr. Hippensteel was injured and out of sight concealed within [Wolf]'s [place] and 2) that there was a missing and perhaps loaded and unaccounted for weapon in a situation where there were also missing person(s).
>
> The police testified that they did not know Mr. Hippensteel, nor did they know whether he was a good guy, bad guy, hostage or victim. They only knew that they had a person missing who had been in [Wolf]'s apartment immediately preceding the discharge of the weapon, and they knew that they had a missing

and potentially loaded shotgun. This clearly creates an exigent circumstance of concern both for the safety of Mr. Hippensteel as well as the police and the general public.

Under these facts, the police were presented with a chaotic atmosphere regarding the discharge of a weapon, missing person and missing weapon. This presented a scenario of exigent circumstances under which there was not time to obtain a search warrant for the location of the weapon, without placing the safety of the police, Mr. Hippensteel and the general community surround[ing] the premises at risk. Ms. Bowen told the police that [Wolf] often hid a weapon in trash cans in the rear of the residence, or beneath the floor and under the chaotic circumstances facing the officers on the scene, locating Mr. Hippensteel and the missing shotgun immediately was called for in order to protect both Mr. Hippensteel, the police and the public. As such, under the circumstances, the police were not required to obtain a warrant in order to search for and secure the weapon.

Order, 1/9/2013, at 6-8 (footnote omitted).

Our review of the record supports the trial court's conclusion. First, the evidence demonstrates that even though Wolf was handcuffed, his consent was voluntary where he asked the police to come into his apartment in order to avoid being seen with the officers. Wolf even acknowledged the police did not use duress or coercive tactics to enter his apartment. Furthermore, contrary to Wolf's argument that he should have been informed of his ability to refuse the first entry into his apartment, we reiterate that "the Commonwealth is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." *Powell*, 994 A.2d at 1102. Likewise, while the officers may have smelled alcohol, they determined Wolf to be coherent, which the court found credible. Lastly,

and significantly, when Wolf refused to sign the consent-to-search form, the officers **stopped and waited until they obtained a search warrant** before continuing to search for the missing gun.

Second, even if Wolf did not give consent, the evidence also established there were several exigent circumstances present: (1) the missing gun that Wolf had recently fired in the direction of the apartment ceiling, and (2) the possibility of a shooting victim, Hippensteel, who was present when Wolf fired the gun. As the trial court indicated, the police arrived at a chaotic scene and had a legitimate concern regarding Hippensteel's whereabouts, in which they received a report that he may still have been in Wolf's apartment, and, where there was a missing and possibly still loaded sawed-off shotgun in the same location as Hippensteel. Based on the totality of the circumstances, we agree with the court's findings Wolf's consent was voluntary, there were exigent circumstances, and the police were not required to obtain a warrant in order to search for and secure the shotgun.

In Wolf's second argument, he contends the verdict was against the weight of the evidence.[6] Wolf's Brief at 11. Specifically, he states:

> In this case [Wolf] raised the defense of duress. The evidence in this case supported that [Wolf] acted under duress in possessing the firearm. [Wolf] in his statement to the police indicated that

---

[6] Wolf properly preserved his challenge to the weight of the evidence by raising it in a post-sentence motion. *See* Pa.R.Crim.P. 607(A).

he had previously been threatened by Alan, and that he was holding the firearm for him.  In addition, other witnesses testified that had been present when Alan had violently threatened [Wolf].  The defense of duress was not disproved by the Commonwealth.

*Id.*

Appellate review of a weight of the evidence claim is well-established:

A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice.  **Commonwealth v. Widmer**, 560 Pa. 308, 318–20, 744 A.2d 745, 751–52 (2000); **Commonwealth v. Champney**, 574 Pa. 435, 443–44, 832 A.2d 403, 408–09 (2003). On review, an appellate court does not substitute its judgment for the finder of fact and consider the underlying question of whether the verdict is against the weight of the evidence, but, rather, determines only whether the trial court abused its discretion in making its determination. **Widmer**, 560 Pa. at 321–22, 744 A.2d at 753; **Champney**, 574 Pa. at 444, 832 A.2d at 408.

**Commonwealth v. Lyons**, 79 A.3d 1053, 1067 (Pa. 2013), *cert. denied*, 134 S.Ct. 1792 (U.S. 2014).

In denying Wolf's post-trial motions, the court did not specifically address the weight claim, but focused on the sufficiency issue, finding "there was ample evidence to support the verdict of the fact-finder on all counts." N.T., 3/19/2014, at 2.  Although the trial court did not address the weight claim in its Rule 1925(a) opinion or state its specific reasons for denying Wolf's weight claim in its order addressing his post-sentence motions, the fact that the motions were denied substantiates that the trial court did not believe that the jury's verdict "shocked one's sense of justice." **Lyons**, 79

A.3d at 1067. *See Commonwealth v. Upshur*, 764 A.2d 69, 73 (Pa. Super. 2000) (*en banc*), *appeal dismissed as improvidently granted,* 782 A.2d 538 (Pa. 2001) (holding weight claim was still reviewable even where the trial court did not specifically address the claim but denied the post-sentence motion).

Moreover, we agree with the court's ultimate determination. While Wolf may have presented the defense that he was under duress at the time of the incident, the jury was free to reject to that notion. Indeed, while Alan may have previously threatened Wolf, Wolf did not present evidence that Alan was present on October 31, 2011, when he fired the weapon in front of Hippensteel. Moreover, Wolf admitted he was not allowed to possess a firearm, and yet, even with this story of holding it for a friend, he still possessed the gun. Wolf asks this Court to reweigh the evidence; however, we decline to do so. As our Supreme Court has made clear, we may not reweigh the evidence and substitute our judgment for the trial court's decision. *See Lyons*, *supra*. Therefore, Wolf's weight claim fails.[7]

Judgment of sentence affirmed.

_____

[7] Wolf also had raised the issue of sufficiency of the evidence in his statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). However, in his brief he withdraws this claim.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/23/2015