J-S16024-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOHN INGRAM | |
| Appellant | No. 605 EDA 2013 |

Appeal from the Judgment of Sentence January 24, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001592-2011

BEFORE:  OTT, J., DUBOW, J., and JENKINS, J.

MEMORANDUM BY OTT, J.:                          **FILED MARCH 29, 2016**

John Ingram appeals from the judgment of sentence imposed on January 24, 2013.[1]  The trial court found Ingram guilty of possession of a controlled substance, possession with intent to deliver a controlled substance (PWID), and conspiracy.[2]  Ingram was sentenced to serve a mandatory minimum sentence of three to six years' incarceration, pursuant to 18 Pa.C.S. § 7508, and three years' probation.  In this appeal, Ingram presents

---

[1] We note the unexplained delay in this case, as follows:  Ingram filed a timely notice of appeal on February 25, 2013.  On June 5, 2013, the trial court issued a Pa.R.A.P. 1925(b) order, directing Ingram to file a concise statement of errors complained of on appeal. Ingram filed the concise statement on July 28, 2014.  The trial court filed its opinion on February 23, 2015.  The trial court's record and opinion were received in this Court on February 25, 2015.

[2] 35 P.S. § 780-113(a)(16), (a)(30), and 18 Pa.C.S. § 903, respectively.

three issues, namely, the sufficiency of the evidence, the weight of the evidence, and the legality of his sentence. Based upon the following, we find merit solely in the sentencing challenge and, therefore, we vacate the judgment of sentence and remand for resentencing.

As the parties are well acquainted with the facts and procedural history of this case, which are fully set forth in the trial court's opinion, we do not restate them. *See* Trial Court Opinion, 2/23/2015, at 1–5.

The first issue presented by Ingram is a challenge to the sufficiency of the evidence.[3] "A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000).

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact finder to find every element of the crime

_____

[3] We note the Commonwealth's argument that Ingram's sufficiency challenge is waived for failure to specify in his Pa.R.A.P. 1925(b) statement the elements for which the evidence was insufficient. *See* Commonwealth Brief at 7, *citing* **Commonwealth v. Williams**, 959 A.2d 1252, 1257–1258 (Pa. Super. 2008). Ingram's concise statement stated: "The evidence submitted at trial was insufficient to convict [Ingram] of Possession with Intent to Distribute, Conspiracy and Intentional Possession of a Controlled Substance." Ingram's Rule 1925(b) Statement, at ¶5. However, we decline to find waiver and will review Ingram's sufficiency issue. **See Commonwealth v. Laboy**, 936 A.2d 1058, 1060 (Pa. 2007) (declining to find waiver for alleged failure of Rule 1925(b) statement to adequately develop sufficiency of evidence claim where matter was "relatively straightforward drug case," evidentiary presentation spanned "mere thirty pages of transcript," and trial "court readily apprehended [defendant's] claim and addressed it in substantial detail").

beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute its judgment for that of the fact-finder. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. The entire record must be evaluated and all evidence actually received must be considered. The trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Ratsamy***, 934 A.2d 1235-36, 1237 (Pa. 2007) (citations and quotation marks omitted).

Based on our review of the record, the arguments presented by Ingram, and the relevant case law and statutes, we conclude Ingram's sufficiency challenge warrants no relief. Furthermore, as the trial court has thoroughly addressed this issue in its opinion, we adopt the trial court's discussion as dispositive of Ingram's sufficiency claim. **See** Trial Court Opinion, 2/27/2015, at 6–11. Accordingly, no relief is due.

The second issue raised by Ingram is a challenge to the weight of the evidence. The Commonwealth takes the position this issue is waived, and we find this position to be correct. Our review confirms that Ingram has waived this claim by failing to raise it in a post-sentence motion, or by a written or oral motion prior to sentencing, as required by Pa.R.Crim.P.

607(A).[4]  Furthermore, the fact that the trial court addressed this claim in its Pa.R.A.P. 1925(a) opinion does not overcome waiver. *See Commonwealth v. Thompson*, 93 A.3d 478, 490-491 (Pa. Super. 2014). Accordingly, we deem Ingram's weight claim waived.

Finally, Ingram contends his sentence is unconstitutional, based upon *Alleyne v. United States*, 133 S.Ct. 2151 (2013).  Here, on January 24, 2013, Ingram received a mandatory sentence of three to six years' incarceration pursuant to 18 Pa.C.S. § 7508 ("Drug trafficking sentencing and penalties.").  *See* Trial Court Opinion, at 5 and n.14.  He filed a timely notice of appeal on February 25, 2013.  While this case was pending before this Court, the United States Supreme Court, on June 17, 2013, decided *Alleyne*, holding that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Alleyne*, 133 S. Ct. at 2155.

_____

[4] Rule  607 provides, in pertinent part:

> Rule  607.  Challenges  to  the  Weight  of  the  Evidence
>
> (A) A claim that the verdict was against the weight of the evidence ***shall*** be raised with the trial judge in a motion for a new trial:
>
>> (1)  orally,  on  the  record,  at  any  time  before sentencing;
>> (2) by written motion at any time before sentencing; or
>> (3) in a post-sentence motion.

Pa.R.Crim.P. 607(A) (emphasis supplied).

Applying this mandate, this Court, in **Commonwealth v. Newman**, 99 A.3d 86 (Pa. Super. 2014) (*en banc*), concluded that **Alleyne** rendered the mandatory minimum sentencing provision at 42 Pa.C.S. § 9712.1 unconstitutional and found the unconstitutional provisions of section 9712.1 were not severable from the statute as a whole.[5] The **Newman** Court also instructed that **Alleyne** applies to any criminal case still pending on direct appeal as of June 27, 2013, the date of the **Alleyne** decision. **Newman**, 99 A.3d at 90. In light of **Alleyne** and **Newman**, a panel of this Court, in **Commonwealth v. Cardwell**, 105 A.3d 748 (Pa. Super. 2014), *appeal denied*, 121 A.3d 494 (Pa. 2015), held section 7508 to be facially unconstitutional in its entirety. **Cardwell**, 105 A.3d at 754–755.

As Ingram's case was pending on direct review when **Alleyne** was decided, **Alleyne** is applicable. **See Newman, supra**. In this regard, the Commonwealth and the trial court have stated that they recognize **Alleyne** is applicable, and that the judgment of sentence must be vacated and remanded for resentencing.[6]

In sum, we find no merit in Ingram's sufficiency challenge, and find waiver with regard to his challenge to the weight of the evidence. However,

---

[5] **See also Commonwealth v. Hopkins**, 117 A.3d 247 (Pa. 2015) (holding 18 Pa.C.S. § 6317 is unconstitutional and non-severable).

[6] **See** Commonwealth Brief at 8–9; Trial Court Opinion, 2/23/2015, at 12–14.

as to Ingram's sentencing challenge, we grant relief in the form of a new sentencing hearing, based upon *Alleyne*.

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.[7]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/29/2016

---

[7] In the event of future proceedings, the parties are directed to attach a copy of the trial court's February 23, 2015, opinion to this memorandum.



IN THE COURT OF COMMON PLEAS
PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

FILED

FEB 23 2015

Criminal Appeals Unit
First Judicial District of PA

COMMONWEALTH OF PENNSYLVANIA     :     CP-51-CR-0001592-2011

                        vs.                     :

JOHN INGRAM                      :

## O P I N I O N

KENNEDY, SEAN F., J.                         February 2, 2015

John Ingram ("the Defendant") appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his conviction for possession of a controlled substance ("possession"), possession with intent to deliver a controlled substance ("PWID") and criminal conspiracy (conspiracy).[1] The relevant facts and procedural history are as follows.

## FINDINGS OF FACT

On December 3, 2010, at approximately 6:00 p.m., Officer Nathan Ramos ("Officer Ramos") was conducting undercover surveillance on the 1300 block of West Rush Street, in Philadelphia, Pennsylvania.[2] N.T. 11/26/2012 at 8-10. At that time, a female, subsequently identified as Trisha Clay ("Ms. Clay"), was standing in front of 1318 West Rush Street and a

---

[1] 35 Pa.C.S. §780-113(a)(16), 35 Pa.C.S. §780-113(a)(30) and 18 Pa.C.S. §903, respectively.
[2] Officer Ramos has been a police officer for more than 13 years and a member of the Narcotic Strike Force for more than 10 years. N.T. 11/26/2012 at 9.

1

male, subsequently identified as the Defendant, was standing on the southwest corner of Park and Rush Streets, in front of 1330 West Rush Street.[3] Id. at 10, 16.

Moments later, an unidentified male approached Ms. Clay. Id. at 10. Following a brief conversation, the male handed money to Ms. Clay, who pulled small objects from the front of her pants and handed the objects to the male. Id. As the unidentified male was leaving the area,[4] the Defendant approached Ms. Clay. Following a brief conversation, Ms. Clay handed money to the Defendant, who counted the money as he walked eastbound and then out of view. Id. at 11. Approximately three minutes later, the Defendant came back into view and at that time, he entered the property located at 1330 West Rush Street ("the Rush Street property"). Id. Approximately five minutes later, the Defendant exited the property and returned to the southwest corner of Park and West Rush Streets. Id.

Between 6:10 and 6:25 p.m., Ms. Clay engaged in seven additional transactions – unknown individuals would approach Ms. Clay and following brief conversations, the individuals would hand money to Ms. Clay, who would retrieved small objects from the front of her pants and hand the objects to the individuals, who would then leave the area.[5] Id. at 11, 13-14. At the completion of these transactions, the Defendant again approached Ms. Clay. Id. at 17. The Defendant spoke with Ms. Clay and then quickly re-entered the Rush Street property. Id.

At approximately 6:30 p.m., three additional individuals approached Ms. Clay. Id. at 11-12. These individuals, who were subsequently identified as Ashby Waters ("Ms. Waters"), Brad Brown ("Mr. Brown") and Barry Crosby ("Mr. Crosby"), were standing with Ms. Clay when the

---

[3] The Defendant was standing approximately 40 to 50 feet from Ms. Clay. Id. at 14-15.
[4] Officer Ramos notified backup officers of the male's description and direction of travel, but the male was never located or stopped. Id. at 10.
[5] None of these individuals were stopped. Id. at 11.

2

Defendant exited the Rush Street property. Id. Upon exiting the property, the Defendant approached the area where Ms. Clay, Ms. Waters, Mr. Brown and Mr. Crosby were standing and at that time, the Defendant handed small objects to Ms. Clay. Id. at 12, 18-19. After the Defendant handed the small objects to Ms. Clay, Ms. Clay handed small objects to Ms. Waters, [6]Mr. Brown and Mr. Crosby, in exchange for money. Id. at 12, 18-19. As Ms. Waters, Mr. Brown and Mr. Crosby began to leave the area, Ms. Clay handed money to the Defendant, who counted the money while walking westbound on Rush Street. Id. at 12. Officer Ramos called for back-up officers to come into the area and stop all of the aforementioned individuals. Id.

At the conclusion of Officer Ramos' testimony, the Commonwealth presented additional evidence pursuant to stipulations by and between counsels: Ms. Waters was stopped by Officer Brooks, who recovered one blue-tinted ("blue"), heat-sealed Ziploc packet of crack cocaine[7] from the highway, which she had observed Ms. Waters discard. Id. at 22. Mr. Brown was stopped by Sergeant Dutch and then turned over to Officer Brooks, who recovered two blue, heat-sealed Ziploc packets of crack cocaine[8] from the highway, which Sergeant Dutch had observed Mr. Brown discard. Id. at 23. Mr. Crosby was stopped by Officers Bartle and Santiago and Officer Santiago recovered one blue, heat-sealed Ziploc packet of crack cocaine from the highway, which he had observed Mr. Crosby discarded.[9] Id. at 23-24. Ms. Clay was stopped by Officer Reilly, who recovered 13 blue, heat-sealed Ziploc packets of crack cocaine,[10] as well as $25.00, from Ms. Clay's person. Id. at 24-25.

---

[7] Exhibit C-1.
[8] Exhibit C-2.
[9] Exhibit C-3.
[10] Exhibit C-4.

3

The Commonwealth then presented the testimony of Officer Gregory Fagan ("Officer Fagan"). On December 3, 2010, Officer Fagan, who was in a marked vehicle and in uniform, was working in a back-up capacity to Officer Ramos, in the area of 1300 West Rush Street.[11] N.T. 11/26/2012 at 26. At approximately 6:30 p.m., Officer Ramos put out information for the Defendant. Id. Officer Fagan went to the 2800 block of North 13th Street, where he observed and then stopped the Defendant. Id. at 26-27. Officer Fagan recovered $100.00 from the Defendant's person. Id. at 27. He arrested the Defendant and placed him in the police vehicle. Id. At that point, Officer Ramos directed Officer Fagan to the Rush Street property. Id. Officer Fagan went to the Rush Street property and knocked on the door. Id. The door was answered by a female, who identified herself as Brittany Hayward ("Ms. Hayward"). Id.

Officer Fagan introduced himself to Ms. Hayward and he questioned her about the Defendant. Id. He gave Ms. Hayward a consent-to-search form. Id. at 28. Officer Fagan explained the form to Ms. Hayward, who then signed the form. Id. at 28, 30. Based upon his conversation with Ms. Hayward, Officer Fagan searched the living room closet of the Rush Street property. Id. at 28, 30-31. He recovered $121.00 and a WD40 can from the closet. Id. at 28, 30-31. The WD40 can had a removable bottom. Id. at 28, 31-32. Upon removing the bottom of the can, Officer Fagan recovered a clear plastic sandwich bag that contained 60 blue, heat-sealed Ziploc packets of crack cocaine.[12] Id.

At the conclusion of Officer Fagan's testimony, the Commonwealth rested its case. The Defendant did not testify or present any witnesses. Rather, he rested on the record created by the Commonwealth.

---

[11] Officer Fagan has been a member of the Philadelphia Narcotic Strike Force for 13 years. Id. at 31.
[12] Exhibit C-6. (The Defendant did not object to this Exhibit.)

4

## PROCEDURAL HISTORY

The Defendant was arrested on December 3, 2010. Thereafter, the Defendant was charged with the crimes of possession, PWID and conspiracy. See, Bill of Information. The bill of information noted that the Commonwealth intended to proceed under 18 Pa.C.S. §7508 (relating to mandatory sentencing and penalties for drug trafficking). Id. Following a bench trial held on November 26, 2013, the Trial Court found the Defendant guilty of all of the aforementioned crimes, relative to all of the seized drugs. N.T. 11/26/2012 at 34. Sentencing was deferred, pending a pre-sentence investigation ("PSI").[13] Id. On January 24, 2013, the Trial Court sentenced the Defendant to serve the mandatory minimum sentence of three to six years in prison, in accordance with the 18 Pa.C.S. §7508,[14] plus three years of reporting probation.[15] N.T. 1/24/2013 at 9. On January 25, 2013, the Defendant filed a timely notice of appeal. On June 5, 2013, the Trial Court issued a 1925(b) order, directing the Defendant to file a concise statement of errors complained of on appeal. The Defendant filed the statement on July 28, 2014.

## MATTERS COMPLAINED OF ON APPEAL

The Defendant's 1925(b) asserts:

1. On November 26, 2012, the Commonwealth proceeded to trial with Bills of Information that did not state the exact weight of the drugs it was proceeding against Petitioner and the mandatory minimum only applicable if the Commonwealth seeks it by providing notice after conviction and before sentencing. Notwithstanding Petition was tried and convicted by this Court on

---

[13] The PSI report documents that at the time of sentencing, the Defendant had five prior convictions for PWID. PSI Report.

[14] 18 Pa.C.S. §7508 directs that where a defendant is convicted of PWID involving cocaine in an aggregate weight between two and ten grams, a minimum sentence of one year in prison is to be imposed; however, a minimum sentence of three years in prison is to be imposed where the defendant has a prior drug trafficking convictions at the time of sentencing. 18 Pa.C.S. §7508(a)(3)(i). At the time of sentencing, the Defendant's counsel acknowledged that the weight of the drugs exceeded two grams and that the Defendant had five prior PWID convictions. N.T. 1/24/2013 at 4-5.

[15] The crime of simple possession merged with the crime of PWID, for sentencing purposes. Sentencing Order.

5

PWID, Conspiracy and K &I after a waiver trial. On January 24, 2013, this Court sentenced Petitioner to 3-6 years for the PWID, and the conspiracy after concluding that the conviction was for narcotics in excess of the mandatory minimum as required by statute and that Petitioner had been convicted previously of PWID, which increased the sentence. See 18 Pa.C.S 7508 (relating to drug trafficking sentencing and penalties).

2. This Court's conclusion that the amount of the drugs was in excess of the mandatory minimum as found in the sentencing hearing and that Petitioner had a previous PWID conviction runs contrary to *Alleyne v. U.S*, 133 Supreme Court 2151 (2013), which requires any mandatory weights must be proven beyond a reasonable doubt. *Alleyne* at 2155 ("[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt. Mandatory minimum sentences increase the penalty for a crime. It follow, then, that any fact that increases the mandatory minimum is an element that must be submitted to the jury").

3. The section mandating a mandatory minimum is not severable as it would still require the court to make a special finding or insert a new element that is not part of the Bills of Information or the Statute as required by the Legislature.

4. Additionally, the conviction cannot stand as it was against the weight of the evidence. *Commonwealth v. Farquharson*, 467 Pa. 50 (Pa. 1976) ("Courts in this jurisdiction have recognized that where the evidence offered to support a verdict of guilt is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, a jury may not be permitted to return such a finding."); *Commonwealth v. Bennett*, 224 Pa. Super, 238, 240 (Pa.Super. 1973) ("a case should not go to the jury where the party having the burden offers testimony of a witness, or of various witnesses, which is so contradictory on the essential issue that any finding by the jury would be a mere guess.").

5. The evidence submitted at trial was insufficient to convict Petitioner of Possession with Intent to Distribute, Conspiracy, and Intentional Possession of a Controlled Substance.

1925(b) Statement, Paragraphs 1-5.

## DISCUSSION[16]

I. **Sufficiency Claim – The evidence presented was sufficient to support the Defendant's convictions for possession, PWID and conspiracy.**

---

[16] For ease of discussion, the Trial Court's opinion addresses the issues in an order different than that presented by the Defendant.

6

In a sufficiency claim, the appellate court considers all of the evidence admitted at trial, and all reasonable inferences drawn from said evidence, in the light most favorable to the verdict winner. Commonwealth v. Jones, 874 A.2d 108, 120 (Pa.Super. 2005). The court then determines whether the evidence was sufficient to enable the trier-of-fact to find that all of the elements of the crime were established beyond a reasonable doubt. Id. The appellate court may not weigh the evidence or substitute its judgment for that of the trier-of-fact. Id. Furthermore:

> The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.... [T]he finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or note of the evidence.

Id. at 120-21 (quoting Commonwealth v. Bullock, 830 A.2d 998, 1000 (Pa.Super. 2003)).

The Defendant, herein, claims, without elaboration, that the evidence was insufficient to support his convictions for possession, PWID and conspiracy. At trial, the Defendant's counsel ("the defense counsel") challenged the sufficiency of the evidence as it related to the drugs recovered from the Rush Street property, only. Defense counsel argued that the evidence presented failed to establish that the Defendant had any ties to the property, that he obtained drugs from the Rush Street property and/or that the drugs recovered from the property were part of the conspiracy. Supplemental N.T. 11/26/2012 at 3-4.[17] The Trial Court rejected these contentions as meritless and convicted the Defendant for the aforementioned crimes, based upon

---

[17] The original transcript from the November 26, 2012 proceedings noted that the parties' closing arguments were taken but not transcribed. N.T. 11/26/2012 at 33-34. The closing arguments were subsequently transcribed at the Trial Court's request and thereafter provided to the Court in a supplemental transcript referenced herein as "Supplemental N.T. 11/26/2012."

all of the recovered drugs. A review of the evidence presented supports the Trial Court's determination.

a.     **Possession and PWID**

To sustain a conviction for the crime of possession, the Commonwealth must prove that the defendant knowingly or intentionally possessed the seized crack cocaine. 35 Pa.C.S. §780-113(a)(16). To sustain a conviction for PWID, the Commonwealth must prove an additional element - that the defendant possessed the seized crack cocaine with the intent to deliver it. See, 35 Pa.C.S. §780-113(a)(30); Commonwealth v. Brown, 48 A.3d 426, 430 (Pa.Super. 2012). "The intent to deliver can be inferred from the surrounding facts and circumstances." Commonwealth v. Perez, 931 A.2d 703, 708 (Pa.Super. 2007) (citing Commonwealth v. Kirkland, 831 A.2d 607, 611 (Pa.Super. 2003), appeal denied, 847 A.2d 1280 (Pa. 2004)). "Factors to consider in determining whether the drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant." Id. (quoting Kirkland, supra at 611).

Where no drugs are found on the defendant's person, the Commonwealth must prove beyond a reasonable doubt that the defendant constructively possessed the drugs seized by the police. Brown, supra at 430 (citing Kirkland, supra at 611).

> Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as 'conscious dominion.' We subsequently defined 'conscious dominion' as 'the power to control the contraband and the intent to exercise that control.' To aid application, we have held that constructive possession may be established by the totality of circumstances.

Id. (quoting Commonwealth v. Parker, 847 A.2d 745, 750 (Pa.Super. 2004)) (internal citations omitted).

8

In the instant case, the evidence presented, as summarized above, left no doubt that the Defendant constructively possessed all of the seized drugs and further, that he did so with the intent to deliver. Significantly, the Defendant was the only person observed entering and exiting the Rush Street property. He was observed entering and then exiting the property immediately before he handed small objects to Ms. Clay, who then handed small objects to Ms. Waters, Mr. Brown and Mr. Crosby approached Ms. Clay. The drugs recovered from Ms. Clay, Ms. Waters, Mr. Brown, Mr. Crosby and the Rush Street property were identical in packaging and type, i.e. blue, heat-sealed Ziploc packets of crack cocaine.

Moreover, as detailed below, the Commonwealth established beyond a reasonable doubt that the Defendant conspired with Ms. Clay to possess with intent to deliver all of the seized drugs. "Successful proof of a conspiracy makes each co-conspirator fully liable for all of the drugs recovered, without the necessity of proving constructive possession." Perez, supra at 709 (citing Commonwealth v. Holt, 711 A.2d 1011, 1017 (Pa.Super. 1998), appeal denied, 781 A.2d 145 (Pa. 2001).

When viewed in the light most favorable to the Commonwealth, there can be no question that the evidence presented was sufficient to support the Defendant's convictions for possession and PWID.

b.    Conspiracy

To sustain a conviction for criminal conspiracy, the Commonwealth is required to prove that the defendant entered into an agreement to commit or aid in an unlawful act with another person or persons, with a shared criminal intent and further, that an overt act was done in furtherance of the conspiracy. 18 Pa.C.S. §903; Commonwealth v. Hennigan, 753 A.2d 245, 253 (Pa.Super. 2000) (quoting Commonwealth v. Rios, 684 A.1025, 1030 (Pa. 1996), cert. denied,

9

520 U.S. 1231 (1997)). "This overt act need not be committed by the defendant; it need only be committed by a co-conspirator." Id. (citing Commonwealth v. Johnson, 791 A.2d 778, 784 (Pa.Super. 1998) (en banc), appeal denied, 739 A.2d 1056 (Pa. 1999). Additionally, proof of an express or written agreement is not required; rather, an agreement may be inferred from a variety of circumstances. Commonwealth v. Perez, 931 A.2d 703, 708 (Pa.Super. 2007) (citing Jones, supra at 121-122).

Circumstances which are relevant, but not sufficient themselves, to establish a corrupt confederation include: an association between the alleged co-conspirators; knowledge of the commission of a crime; presence at the scene of the crime; and/or participation in the object of the conspiracy. Id. at 708-09 (citing Commonwealth v. Swerdlow, 636 A.2d 1173, 1177 (Pa.Super. 1994). "The presence of these circumstances may furnish a 'web of evidence' linking the accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred." Swerdlow, supra.

The summary of evidence in this case reveals facts and circumstances that clearly link the Defendant to a conspiratorial confederation with Ms. Clay for the purpose of trafficking crack cocaine. On December 3, 2010, between the hours of approximately 6:00 p.m. and 6:30 p.m., Officer Ramos observed Ms. Clay engaging in numerous transactions characteristic of drug trafficking. During this same time period, the Defendant was seen interacting with Ms. Clay, on three occasions – The Defendant spoke to Ms. Clay; he received money from Ms. Clay; and, he handed small objects to Ms. Clay, which she then handed to Ms. Waters, Mr. Brown and Mr. Crosby. During this same time period, the Defendant was seen entering and exiting the Rush Street property on two occasions – As noted above, the Defendant entered and exited the Rush Street property immediately before he approached Ms. Clay and handed her the small objects

10

which she, in turn, handed to Ms. Waters, Mr. Brown and Mr. Crosby. As noted above, drugs were recovered from Ms. Clay, Ms. Waters, Mr. Brown and Mr. Crosby that were identical in packaging and type to those recovered from the Rush Street property.

When viewed in the light most favorable to the Commonwealth, there can be no question that the evidence presented was sufficient to support the Defendant's conviction for conspiracy.

## II. Weight of the Evidence - The Trial Court's verdict was not against the weight of the evidence.

The Defendant also claims that the verdict was against the weight of the evidence. A weight of the evidence claim concedes the sufficiency of the evidence. Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000). A weight claim addresses the discretion of the trial court. Id. at 752 (citing Commonwealth v. Brown, 648 A.2d 1177, 1189 (Pa. 1994)). On review, the appellate court decides whether the trial court abused its discretion when ruling on the weight claim; it does not consider the underlying question of whether the verdict was against the weight of the evidence. Id. at 753. An abuse of discretion will only be found where the verdict is so contrary to the evidence as to shock one's sense of justice. Commonwealth v. Diggs, 949 A.2d 873 (Pa. 2008).

Instantly, the Defendant contends that the Commonwealth's evidence was so unreliable and/or contradictory as to make any verdict based thereon pure conjecture. Relying on the defense counsel's closing argument at trial, the Trial Court assumes that this claim pertains to the alleged inconsistency between Officer Ramos' preliminary hearing testimony and his trial testimony. At trial, the defense attorney questioned Officer Ramos about his preliminary hearing testimony.

Q: Now, I'm going to read you some lines.

11

Line 17: Okay. Did [the Defendant] go into 1330 before or after [Ms. Water, Mr. Brown and Mr. Crosby] started talking to Ms. Clay?

A: He was in there before.

Q: Okay. So when [the Defendant] came out was there any exchange or signs of talk between Ms. Clay and [the Defendant] at that time for all those three?

A: None that I know of.

Q: Do you remember testifying to that?

A: Yes, he never spoke to any one of those three.

Q: So the question was: Did he speak to Ms. Clay? Your understanding of the question was, did he speak to the three?

A. Yes.

N.T. 11/26/2014 at 18-19.

Notwithstanding the defense counsel's challenge, the Trial Judge accepted the Commonwealth's evidence, including the testimony of Officer Ramos, as credible. Officer Ramos' trial testimony was clear, detailed and consistent. The Trial Court found that the Officer Ramos' preliminary hearing testimony, as outlined above, was proffered in response to a compound and convoluted question. Officer Ramos reasonably explained that said testimony was proffered based upon a misunderstanding of the questioned asked. Moreover, the record contains overwhelmingly support for the Trial Court's conclusion that the Defendant constructively possessed all of the seized drugs.

Given the evidence of record, which was essentially uncontroverted, the verdict rendered in this case would not shock one's sense of justice. Rather, the record supports the conclusion that the verdict rendered is overwhelmingly supported by the weight of the evidence. Accordingly, the Defendant's weight of the evidence claim must fail.

III.    Legality of Sentence - The sentence imposed on January 24, 2013 was illegal and accordingly, the sentence must be vacated and the matter remanded for resentencing without consideration of the mandatory minimum sentencing provisions at 18 Pa.C.S. §7508.

The Defendant also asserts that the Trial Court's imposition of the mandatory minimum

12

mandatory minimum sentence under 18 Pa.C.S. §7508. Issues regarding the legality of a sentence are questions of law and accordingly, the reviewing court's standard of review is de novo. Commonwealth v. Akbar, 91 A.3d 227, 238 (Pa.Super. 2014) (citation omitted). "A challenge to the legality of a sentence may be entertained so long as the reviewing court has jurisdiction." Commonwealth v. Borovichka, 18 A.3d 1242, 1254 n.4 (Pa.Super. 2014).

Instantly, at the time of the Defendant's sentencing hearing, there was no dispute that the mandatory minimum sentence provisions under §7508 were applicable to the Defendant's case.[18] Moreover, at the time of sentencing, the sentencing scheme set forth at Section 7508 was deemed constitutional. See, McMillan v. Pennsylvania, 477 U.S. 79 (1986) (holding that Pennsylvania's mandatory minimum sentencing statutes, i.e. 42 Pa.C.S. §9712, was constitutional); See also, Harris v. U.S., 536 U.S. 545, 568 (2002) (finding that McMillan, supra, was still sound).

On June 17, 2013, the United States Supreme Court announced its decision in Alleyne v. U.S, ___ U.S. ___, 133 S.Ct. 2151 (2013). The Alleyne Court held:

> Any fact that, by law, increases the penalty for a crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt. Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an element that must be submitted to the jury.

Alleyne, 133 S.Ct. at 2155.

At the time that Alleyne was announced, the Defendant's appeal was pending before the Superior Court. In Commonwealth v. Newman, 99 A.3d 86 (Pa.Super. 2014), the Superior Court held that a challenge to a sentence premised upon Alleyne implicates the legality of the sentence and cannot be waived on appeal. Id. at 89. The Court further held that subsections of mandatory

---

[18] As noted above, the Commonwealth issued an information notifying the Defendant that it intended to proceed under 18 Pa.C.S. §7508. At sentencing, Defendant's counsel stated that the Defendant's conviction for PWID involved cocaine in an aggregate weight over two grams, that the Defendant had five prior PWID convictions and that a mandatory minimum sentence of three to six years was applicable. N.T. 1/24/2013 at 4-5.

13

minimum statutes, that permit a trial court to impose a mandatory minimum sentence based on the court's finding, by a preponderance of the evidence, rather than under the reasonable doubt standard, as required by the Constitution, was not severable from the remainder of the statute and therefore, the statute was unconstitutional in its entirety. Id. at 98, 101-103.[19]

In view of the above, the Trial Court agrees that the sentence imposed on January 24, 2013 was illegal and accordingly, the sentence should be vacated and the matter remanded for re-sentencing.

## CONCLUSION

WHEREFORE, the Trial Court respectfully requests that the Defendant's convictions for possession, PWID and conspiracy be affirmed on appeal; and further, that the matter be remanded for resentencing, without consideration to the mandatory minimum sentencing provisions at 18 Pa.C.S. §7508.

BY THE COURT:

_____
SEAN F. KENNEDY, J.

---

[19] See also, Commonwealth v. Ferguson, 2015 WL 49438 (Pa.Super. 1/5/2015); Commonwealth v. Vargas, 2014 WL 744678 (Pa.Super. 12/31/2014); Commonwealth v. Fennell, 2014 WL 6505791(Pa.Super. 11/21/2014); Commonwealth v. Lawrence, 99 A.3d 116, 123 (Pa.Super. 2014); Commonwealth v. Valentine, 101 A.3d 801 (Pa.Super. 2014); Commonwealth v. Watley, 81 A.3d 108, 117-118 (Pa.Super 2013).

14